**Lal R. BHAYA, Richard Carner, William J. Haessler, Henry A. Parzick, and Earle Williams**

v.

**WESTINGHOUSE ELECTRIC CORPORATION.**

**Civ. A. No. 84–5381.**

United States District Court, E.D. Pennsylvania.

March 22, 1989.

Alan B. Epstein, Philadelphia, Pa., for plaintiffs.

Dona S. Kahn, Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, Senior District Judge.

In November 1985, a jury found that defendant's decision to lay off plaintiffs in December 1982 while retaining certain younger employees was the product of willful discrimination based on age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a) ("ADEA"). Defendant moved for judgment n.o.v. or a new trial. I granted judgment n.o.v. and did not reach the new trial motion. The Court of Appeals for the Third Circuit reversed, 832 F.2d 258, and now has remanded the case for me to consider the defendant's new trial motion. *Bhaya v. Westinghouse,* 832 F.2d 258 (3d Cir.1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989).

Defendant claims a new trial is warranted for numerous reasons. I will discuss only those two grounds which are meritorious. One concerns purported hearsay; the other concerns evidence that defendant laid off other employees after plaintiffs. For the reasons which follow, I will grant defendant's motion for a new trial.

### I. *Standard of Review*

A motion for a new trial on the basis of alleged trial error requires two inquiries: whether an error was in fact made; and whether that error was so prejudicial that refusal to grant a new trial would be "inconsistent with substantial justice." Fed.R.Civ.P. 61. With respect to an evidentiary error, the test under the second inquiry is that a new trial must be granted

unless "it is highly probable that [the erroneous ruling] did not affect the [objecting party's] substantial rights." *McQueeney v. Wilmington Trust Co.,* 779 F.2d 916, 928 (3d Cir.1985); *cf.* Fed.R.Evid. 103(a).

## II. *Purported Hearsay*

Defendant contends that I erroneously admitted out-of-court statements by an unidentified person. While one of the plaintiffs, Henry Parzick, was being questioned by his attorney, the following exchange took place:

Q: What else occurred on that day ...?

A: One point of interest after the meeting, I did speak to Mr. Kinlin. We just chatted, and he informed me that at a meeting that he attended—

Q: Can you explain who that gentleman is?

. . . . .

A: He was my immediate supervisor.

. . . . .

Q: What did he tell to you?

A: He told—

MS. KAHN [defendant's attorney]: Objection, Your Honor. If he's going to tell us what was told third-hand to this person, it's hearsay.

. . . . .

THE COURT: [Sustained objection on basis that no foundation for hearsay exception had been established.]

Q: Can you please tell us what Mr. Kinlin said to you in the context of your employment at Westinghouse on that particular day subsequent to his initial meeting with you?

A: Mr. Kinlin told me that at a meeting that management held at which he was present, a discussion was held regarding our termination.

MS. KAHN: Objection, Your Honor.

THE COURT: No, overruled.

A: *Somebody in that meeting brought up the point that they might be violating —*

MS. KAHN: Objection.

A: *—the labor laws of their contract.*

MS. KAHN: Objection, Your Honor....

. . . .

THE COURT: I overrule the objection.

Q: Mr. Parzick ... please tell us again what Mr. Kinlin told you.

A: Yes. This meeting, it was an executive meeting, the statement was made—

THE COURT: Wait a minute. You know, with your familiarity with the company—you have been with them how long?

A: Forty years less two months or so.

THE COURT: Do you know what an executive meeting is?

A: Yes. People, all the people attending on management level or above.

THE COURT: Okay, all right.

Q: In keeping with that, sir, can you again tell me exactly what Mr. Kinlin said, to the best of your recollection?

A: *A statement was made that maybe we shouldn't be eliminating this group. Maybe we're doing something illegal or against the contract,* and Mr. Nick Kulokoski, who was the personnel manager of the division, said, let's give it a try. What do we have to lose?

MS. KAHN: Objection, Your Honor.

THE COURT: Overruled.

A: That's the basis of—that's exactly what I was told.

N.T. Day 1:96–103. (Emphases added)

Defendant renews its objection that Parzick's testimony about what the unidentified person allegedly said (emphasized above) at the reported management meeting was inadmissible. Defendant maintains that Parzick's testimony contained double hearsay which was inadmissible under Fed.R.Evid. 805 because at least one, if not both, of the parts of the combined statements did not conform with any exception to the hearsay rule, Fed.R.Evid. 801(d)(2)(D) in particular.

The first question is whether Kinlin, had he been the witness rather than Parzick, could have testified about what the unidentified person allegedly said. Defendant

contends that this case is indistinguishable from *Carden v. Westinghouse*, 850 F.2d 996 (3d Cir.1988). In *Carden*, another employment discrimination case, the district court permitted the plaintiff to testify, in an effort to show why he had been dismissed, that his immediate supervisor had told him "they wanted a younger person for the job." The district court concluded that the statement was an admission under Fed.R.Evid. 801(d)(2)(D). The Third Circuit held that to be reversible error, because plaintiff had not established who the unidentified "they" were who had told the supervisor they wanted a younger employee. Without knowing who "they" were, it could not be established that "they" were speaking about a matter within the scope of their employment. *Id.* at 1002.

■ The declaration at issue in *Carden* must be distinguished because the declaration here, "maybe we shouldn't be eliminating this group. Maybe we're doing something illegal or against the contract" was not, at least on its face, offered for the truth of the matter asserted: that the layoffs were illegal.[1] Rather, the unidentified person's declaration was offered to set the stage for Kulokoski's reported response "let's give it a try. What have we got to lose." Kulokoski's response, to which defendant has not objected, was offered to show defendant's corporate state of mind: that management recklessly disregarded the possibility that the layoffs violated ADEA. Of course, without the unidentified person's statement, Kulokoski's response would be meaningless. In short, the declaration here was what has been termed an utterance offered to show its effect on the hearer, and such utterances are not hearsay no matter who makes them. J. Weinstein and M. Berger, *Wein-*

*stein's Evidence,* ¶ 801(c); E. Cleary, Ed. *McCormick on Evidence,* § 249.

As *McCormick* notes, however, utterances such as this one often have a hearsay aspect. Here, the jury might have jumped to the conclusion that because the unidentified person suggested the layoffs might be illegal, they were illegal. Unfortunately, I did not instruct the jury to confine their consideration of the declaration within proper boundaries.

The unidentified person's declaration created another, even more serious problem. While the declarant suggested the layoffs might be "illegal," he never said what law he thought they might violate. In particular, he never mentioned age discrimination or ADEA. The jury could only speculate about whether the declarant and Kulokoski and whoever else attended the management meeting were conscious of the possibility that the layoffs violated ADEA. Defendant's managers might just as well have been concerned that by laying off plaintiffs, defendant would violate its collective bargaining agreement, and associated laws —"the labor laws of their contract"—rather than ADEA. The legality of the layoffs under the collective bargaining agreement or, for example, the National Labor Relations Act, was immaterial to plaintiffs' case. Likewise, Kulokoski's reported response gave no clue of what sort of illegality he was prepared to risk.

■ The unknown person's declaration, therefore, probably was irrelevant. If it was relevant, it was less probative than it was misleading and unfairly prejudicial. The jury probably was left with the impression that defendant's managers were a lawless bunch. That may have been true, but since there was no evidence that the managers were heedless of their duties *under ADEA*, their lawlessness was irrelevant.[2]

---

1. Indeed, the declaration could not have been offered for its truth since the question of the legality of the layoffs is a legal one, not a factual one.

2. The attorneys for both parties probably added to the jury's confusion. In a question put later to Kinlin, defendant's attorney described Parzick's testimony as follows: "Mr. Parzick testified that you told him that you were at an

executive meeting and someone said that maybe we shouldn't be eliminating the negotiation engineers, maybe we're violating the Age Act, and Nick Kulokoski said, 'Let's try it. What do we have to lose.'" N.T. Day 3–82. In his closing during the liability phase, plaintiff's attorney stated "Hank Parzick said unequivocally that he was told that Westinghouse knew that what they did was wrong, that Kulokoski said or was presented with a set of circumstances said,

I am convinced that the unidentified person's declaration should have been excluded under Fed.R.Evid. 403, if not Fed.R. Evid. 402. In the alternative, if it were admissible, it should have been accompanied by a cautionary instruction. It is quite possible that unknown declarant's statement affected defendant's substantial rights. Therefore, a new trial must be granted.

■ Defendant also contends that the unidentified person's statement should have been excluded because Kinlin, when recounting the discussion to Parzick, was not speaking of a matter within the scope of his (Kinlin's) employment. *See* Fed.R. Evid. 801(d)(2)(D). For the sake of completeness, I will explain why this aspect of defendant's objection is without merit. Parzick testified, before the disputed testimony was admitted, that Kinlin was plaintiffs' immediate supervisor. Kinlin's supervisory status carries with it the inference that it was within the scope of Kinlin's duties to talk to Parzick about the circumstances surrounding plaintiffs' layoff. Precisely the same foundation existed in *Carden.* 850 F.2d at 1001. The district court held that foundation to be adequate to satisfy Fed.R.Evid. 801(d)(2)(D), and the Court of Appeals for the Third Circuit said nothing later which suggests that the district court's holding was incorrect in that respect. (The appellate court found the other part of the double hearsay statement infirm.) *Id.*

Parzick also testified that Kinlin attended a meeting during which Parzick and two others were told by Mr. Borden, the acting department manager, that they were being laid off because their position was being eliminated. N.T. Day 1:93–95. Since Kinlin was privy to that meeting, this reinforces my conclusion that the subject of Parzick's layoff was a matter within the scope of his employment. Similarly, it is significant that Kinlin reportedly heard the exchange between the unidentified person and Kulokoski while attending a management meeting. Since Kinlin was privy to that management meeting, at which the layoffs were discussed, the subject of plaintiffs' layoff presumably was a matter within the scope of Kinlin's employment. This is far different from a case in which Kinlin might have overheard two higher managers discussing the layoffs by the water cooler.

Defendant argues that *Hill v. Spiegel* advises the opposite conclusion. 708 F.2d 233 (6th Cir.1983). The plaintiff in *Hill* was an executive before he was discharged. Several fellow employees allegedly had told him that he was discharged because of his age. While those employees were identified as managers, none was identified as a superior *of the plaintiff.* Nor was there any evidence that they had attended meetings in which the plaintiff's discharge had been discussed. Therefore, *Hill* must be distinguished from this case.

### III. *Subsequent Layoffs of Availability Assurance Engineers*

During the liability phase of the bifurcated trial and again during the damages phase, defendant sought to introduce evidence that availability assurance ("AA") engineers had been laid off soon after plaintiffs were laid off. N.T. Day 2:114–118 (liability); Day 8:151–157 (damages). Both times, I sustained plaintiffs' objection on the ground that what happened to the AA engineers was irrelevant. That remains my view with respect to the liability phase of the trial. I now conclude, however, that I should have permitted defendant to introduce its evidence during the damages phase of the trial.

■ The AA engineers were, as a group, younger than plaintiffs, who were called negotiation engineers. The duties of AA engineers were, according to plaintiffs' testimony, similar to those which plaintiffs performed. Plaintiffs' theory of liability was that defendant could have laid off the younger AA engineers and allowed plaintiffs to perform their duties. Defendant chose to retain the AA engineers because the negotiation engineers were older, plaintiffs claimed.

might not this be discrimination, might not this be a violation of state and federal statutes? And Kulokoski, according to Hank Parzick, said to Mr. Kinlin, who said to him, that, yes, let's take our chances." N.T. Day 6:74.

That defendant later laid off the AA engineers was irrelevant to the liability issue. Plaintiffs admitted that defendant's business had declined generally, requiring layoffs. Plaintiffs' contention was that the negotiation engineers were laid off *sooner* than others because plaintiffs were older. Defendant never offered evidence that AA engineers were laid off before or simultaneously with the negotiation engineers.

■ Evidence that defendant laid off AA engineers after plaintiffs were laid off was relevant, however, to damages. If plaintiffs would have been laid off for permissible reasons sometime after December 1982, then plaintiffs' damages should have been limited accordingly. Any subsequent loss of pay simply was not caused by defendant's discrimination. *Helbling v. Unclaimed Salvage & Freight Co., Inc.,* 489 F.Supp. 956, 963 (E.D.Pa.1980) (back pay cut off at the time when the store in which plaintiff had worked as manager, was closed); *Welch v. University of Texas,* 659 F.2d 531, 535 (5th Cir.1981) (back pay cut off at time when the grant which had funded plaintiff's position ended); *cf. Dillon v. Coles,* 746 F.2d 998, 1006 (3d Cir.1984) (suggesting front pay should be of limited duration when plaintiff probably would have been fired for permissible reasons).

■ The remaining question is whether this erroneous exclusion of evidence warrants a new trial as to damages. In *McQueeney v. Wilmington Trust,* the Third Circuit held that a new trial was necessary where the erroneously excluded evidence "might have persuaded the jury to award significantly less damages in lost earnings than it in fact did." 779 F.2d at 930. I am persuaded that a similar situation exists here. Therefore, a new trial is required.

## IV. *Conclusion*

For the reasons I have stated, I will grant defendant's motion for a new trial.