922 F.2d 184
 54 Fair Empl.Prac.Cas. 1078,
55 Empl. Prac. Dec. P 40,462,
31 Fed. R. Evid. Serv. 1379
Lal R. BHAYA, and Richard Carner, and William J. Haessler,
and Henry A. Parzick, and Earle Williams, Appellants,
v.
WESTINGHOUSE ELECTRIC CORPORATION, Appellee.
 No. 89-2063.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 11, 1990.
Decided Dec. 28, 1990.
Rehearing and Rehearing In Banc Denied Jan. 24, 1991.
 
 Alan P. Epstein (argued), Jablon, Epstein & Wolff, Philadelphia, Pa., for appellants.
 Dona S. Kahn (argued), Anderson, Kill, Olick & Oshinsky, P.C., Philadelphia, Pa., for appellee.
 Before MANSMANN, COWEN and ALITO, Circuit Judges.
 OPINION OF THE COURT
 ALITO, Circuit Judge:
 
 
 1
 This is an appeal from a final judgment following a jury verdict in favor of Westinghouse Electric Corporation ("Westinghouse") in a suit by five former Westinghouse engineers under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Sec. 621 et seq. The plaintiffs contend that the district court erred in granting Westinghouse's motion for a new trial, in excluding certain evidence at the second trial, and in refusing to give a supplemental jury instruction at the second trial. We will affirm.
 
 I.
 
 2
 The background of this case is set out in some detail in this court's prior opinion, Bhaya v. Westinghouse Electric Corp., 832 F.2d 258 (3d Cir.1987), which reversed the district court's entry of judgment notwithstanding the verdict following the first trial, and in the opinion of the district court granting a new trial on remand. Bhaya v. Westinghouse Electric Corp., 709 F.Supp. 600 (E.D.Pa.1989).[1] Accordingly, a brief summary will suffice for present purposes.
 
 
 3
 The five plaintiffs held the position of "negotiation engineer" before Westinghouse eliminated that entire job progression in 1982. The plaintiffs claimed that Westinghouse eliminated their job progression, rather than making layoffs based on seniority from a pool consisting of the negotiation engineers and engineers in two other closely related job progressions (the "availability assurance engineers" and the "applications engineers"), because the negotiation engineers were older. After the first trial in 1985, the jury returned a verdict for the plaintiffs. Westinghouse then moved for a judgment notwithstanding the verdict, because of the asserted insufficiency of the evidence. In the alternative, Westinghouse sought a new trial because of alleged trial errors. The district court granted judgment notwithstanding the verdict and thus did not address the claimed trial errors that formed the basis for the new trial motion.
 
 
 4
 On appeal, this court reversed, holding that the evidence, when viewed in the light most favorable to the plaintiffs, was sufficient to support a judgment in their favor. 832 F.2d at 262. We therefore vacated the judgment notwithstanding the verdict but noted that the district court on remand could consider Westinghouse's as yet undecided motion for a new trial. Id. at 263.
 
 
 5
 On remand, the district court granted a new trial both on liability and damages. At the second trial, the jury found that Westinghouse was not liable, and the plaintiffs have appealed.
 
 II.
 
 6
 A. We will first address the district court's decision to grant a new trial on liability. The district court's decision was based on the admission, over objection, of testimony by one of the plaintiffs, Henry Parzick, concerning out-of-court statements supposedly made at a Westinghouse management meeting. On direct examination, Parzick stated that his immediate supervisor, Thomas Kinlin, had related a discussion about the termination of the negotiation engineers that had occurred at the meeting in Kinlin's presence.[2] Asked what Kinlin had told him, Parzick testified as follows:
 
 
 7
 Somebody in that meeting brought up the point that they might be violating ... the labor laws of their contract.
 
 
 8
 When plaintiffs' counsel asked Parzick to state "exactly what Mr. Kinlin said, to the best of [his] recollection," Parzick testified:
 
 
 9
 A statement was made that maybe we shouldn't be eliminating this group. Maybe we're doing something illegal or against the contract, and Mr. Nick Kulokoski, who was the personnel manager of the division, said, let's give it a try. What do we have to lose?
 
 
 10
 Thus, Parzick related out-of-court statements made by three individuals: Kinlin, who allegedly recounted the discussion at the management meeting; an unidentified attendee at the meeting, who allegedly brought up the point that "they might be violating ... the labor laws of their contract" and said that "[m]aybe [they] were doing something illegal or against the contract"; and Kulokoski, the division personnel manager, who allegedly responded, "let's give it a try. What do we have to lose?"
 
 
 11
 In granting a new trial on liability, the district court focused on the statements of the unidentified attendee. The court concluded that the statements were not hearsay because they were offered, not for the truth of the matter asserted, but to show the meaning of Kulokowski's response ("let's give it a try. What do we have to lose?"), which would have otherwise been meaningless. 709 F.Supp. at 602-03. While holding that admission of these out-of-court statements was not barred on hearsay grounds, the district court concluded that the unidentified declarant's statements were probably irrelevant (and thus inadmissible under Fed.R.Evid. 402) and that, even if relevant, they should have been excluded under Fed.R.Evid. 403. 709 F.Supp. at 603-04. The court explained that while the unidentified attendee reportedly said that the layoffs might be "illegal," he never stated that they might violate the ADEA. The court observed that the unidentified attendee's comments might just as well have concerned the possible violation of the collective bargaining agreement or labor laws but that these possible violations were immaterial in an age discrimination case. Id. Thus the court concluded that the unidentified declarant's statements should have been excluded or, in the alternative, accompanied by a cautionary instruction. Id. Applying the new trial standard set out in McQueeny v. Wilmington Trust Co., 779 F.2d 916, 928 (3d Cir.1985), the district court held that the erroneous admission of this testimony necessitated a new trial because it was "quite possible" that Westinghouse's "substantial rights" had been affected. 709 F.Supp. at 604.
 
 
 12
 B. When the granting or denial of a new trial is contested on appeal, substantial deference must generally be given to the decision of the trial judge, "who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart" (Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 216, 67 S.Ct. 752, 755, 91 L.Ed. 849 (1947)). In Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 36, 101 S.Ct. 188, 191, 66 L.Ed.2d 193 (1980), where a new trial was granted based in part on erroneous evidentiary rulings, the Supreme Court stated that "[t]he authority to grant a new trial ... is confided almost entirely to the exercise of discretion on the part of the trial court." See also Waldorf v. Shuta, 896 F.2d 723, 737 (3d Cir.1990); Honeywell v. American Standards Testing Bureau, 851 F.2d 652, 655 (3d Cir.1988), cert. denied, 488 U.S. 1010, 109 S.Ct. 795, 102 L.Ed.2d 787 (1989); Link v. Mercedes-Benz of North America, Inc., 788 F.2d 918, 921-22 (3d Cir.1986); Silverii v. Kramer, 314 F.2d 407, 413 (3d Cir.1963) ("It is well settled that the granting or refusing of a new trial is a matter resting in the sound discretion of the trial judge and his action thereon is not reviewable upon appeal, save in the most exceptional cases").
 
 
 13
 Particular deference is appropriate in the present case because the decision to grant a new trial rested on an evidentiary ruling that was itself entrusted to the trial court's discretion. Indeed, a trial judge's decision to admit or exclude evidence under Fed.R.Evid. 403 may not be reversed unless it is "arbitrary and irrational."[3] United States v. DePeri, 778 F.2d 963, 973-74 (3d Cir.1985), cert. denied, 475 U.S. 1110, 106 S.Ct. 1518, 89 L.Ed.2d 916, 475 U.S. 1110, 106 S.Ct. 1518, 89 L.Ed.2d 916 and 476 U.S. 1159, 106 S.Ct. 2277, 90 L.Ed.2d 720 (1986); United States v. Friedland, 660 F.2d 919, 929 (3d Cir.1981), cert. denied, 456 U.S. 989, 102 S.Ct. 2268, 73 L.Ed.2d 1283 (1982); United States v. Long, 574 F.2d 761, 767 (3d Cir.) ("If judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal"), cert. denied, 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978).
 
 
 14
 Applying these deferential standards of review, we sustain the trial judge's decision to grant a new trial in this case. The trial court's conclusion that the testimony at issue should have been excluded under Fed.R.Evid. 403 was unquestionably neither arbitrary nor irrational but reflected an appropriate assessment and weighing of the prescribed considerations. Relevant evidence may be excluded under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jurors." Here, the trial judge had solid grounds for concluding that the out-of-court statements at issue had little if any relevance or probative value and that they created a substantial danger of "unfair prejudice," "confusion of the issues," and "misleading the jurors."
 
 
 15
 The out-of-court statements had little if any relevance or probative value because they lacked any appreciable link to age discrimination or the ADEA. According to Parzick's testimony, the unidentified attendee specifically mentioned that terminating the negotiation engineers might violate "the labor laws of their contract" or "the contract." The most natural interpretation of this testimony is that it referred to a possible breach of the collective bargaining agreement. But in an age discrimination case, evidence that management was willing to risk a violation of its collective bargaining agreement would be relevant only if that fact made it "more probable ... than it would be without the evidence" that management was also willing to risk a violation of the ADEA. Fed.R.Evid. 401. In our judgment, any connection between a willingness to risk a breach of the collective bargaining agreement and a willingness to risk a violation of age discrimination laws is remote at best.[4]
 
 
 16
 Even if the phrase "labor laws of the contract" is interpreted to embrace the entire body of employment law--an arguable although less plausible interpretation--the statement in question would still lack appreciable probative value, as does the unidentified attendee's additional statement that the termination might be "illegal" in some unspecified way. Because these broad and vague statements might have referred to countless forms of illegal conduct, the statements in themselves carry little probative weight in proving that management considered the age of the negotiation engineers in deciding to eliminate their jobs. Of course, the probative value of these statements would have been greatly enhanced if they had been uttered during a discussion relating in some way to the ages of the engineers affected by management's decision. But plaintiffs offered no such proof. Without some link to age, these broad and vague references had little probative weight in proving an ADEA case.
 
 
 17
 By contrast, the out-of court statements created a great danger of "unfair prejudice" (Fed.R.Evid. 403), which has been defined as an "undue tendency to suggest decision on an improper basis." Advisory Committee Note on Rule 403. Evidence that a party committed wrongs other than those at issue in a case often creates a danger of "unfair prejudice" because such evidence may influence a jury to return a verdict based on a desire to punish for the other wrongs.[5] See 10 Moore's Federal Practice Sec. 403.10 at IV-75 & n. 9 (1990); E. Cleary (ed.), McCormick on Evidence Sec. 185 at 545 (1984); C. Wright & A. Miller, Federal Practice and Procedure Sec. 5215 at 281. Here, the testimony indicating that Westinghouse management was willing to engage in conduct that might violate the "labor laws of the contract" or might be "illegal" in some unspecified way created just such a danger. As the trial judge aptly put it, "[t]he jury probably was left with the impression that [Westinghouse's] managers were a lawless bunch." 709 F.Supp. at 600. The jury might well have been influenced to return a verdict against Westinghouse simply because the jury disapproved of management's generally lawless attitude as portrayed by Parzick's testimony. Thus the testimony at issue here presented a textbook example of unfair prejudice.
 
 
 18
 For similar reasons, this testimony also created a great danger of "confusion of the issues." While the jury should have considered only whether Westinghouse had committed age discrimination, the testimony in question invited the jurors to ponder whether Westinghouse had violated "the labor laws of the contract" or whether it had committed other unspecified illegalities. By tending to divert the focus of the jury's attention in this way, the testimony injected a confusing factor into the case.
 
 
 19
 Finally, the testimony at issue created a substantial danger of "misleading the jury." The statement that termination of the negotiation engineers might violate the "labor laws of the contract" or might be "illegal" did not necessarily relate in any way to age discrimination; indeed, as previously observed, it seems more likely that these references pertained exclusively to the possibility of breaching the collective bargaining agreement. Yet the admission of these vague and suggestive statements in an age discrimination case had a natural tendency to mislead. This danger is well illustrated by the following passage from the closing argument of plaintiff's counsel. Plaintiffs' counsel told the jury (709 F.Supp. at 603 n. 2) (emphasis added):
 
 
 20
 Henry Parzick said unequivocally that he was told that Westinghouse knew that what they did was wrong, that Kulokoski said ... might not this be discrimination, might not this be a violation of state and federal statutes? And Kulokoski, according to Hank Parzick, said ... yes, let's take our chances.
 
 
 21
 In fact, the out-of-court statements recounted by Parzick contained no mention of "discrimination" or the "violation of state and federal statutes." But admission of those statements in an age discrimination case tended to mislead by suggesting--without foundation--precisely what plaintiffs' counsel inaccurately claimed in his summation. In sum, the district court had ample grounds for concluding that the out-of-court statements in question should have been excluded under Rule 403.
 
 
 22
 Having identified this incorrect evidentiary ruling, the trial judge was required under McQueeny v. Wilmington Trust Co., 779 F.2d at 928, to grant a new trial unless it was "highly probable" that the error did not affect any "substantial rights". No such conclusion was possible in the present case. Indeed, plaintiffs implicitly concede the importance of the out-of-court statements by arguing in this appeal that the exclusion of the same testimony at the second trial caused them "substantial prejudice" (Appellants' Br. 37) and thus constituted reversible error. See Fed.R.Civ.P. 61 (judgment may not be set aside based on exclusion of evidence unless necessary to ensure "substantial justice"). Accordingly, it is apparent that the granting of a new trial on liability was justified.
 
 III.
 
 23
 Plaintiffs' remaining arguments clearly lack merit. The district court correctly held that a new trial should be granted on the issue of damages;[6] and in any event, the granting of a new trial on damages was inconsequential, since the district court properly granted a new trial on liability, the jury at the second trial found for Westinghouse on that issue, and plaintiffs have not asserted any sound basis for reversing the judgment entered following that verdict.
 
 
 24
 Plaintiffs contest the exclusion at the second trial of the out-of-court statements just discussed in relation to the first trial. However, the trial judge's decision to exclude those statements at the second trial[7] must be upheld for the same reasons already explained.[8]
 
 
 25
 We also reject plaintiffs' contention that the district court erred by refusing to admit as part of their rebuttal case an excerpt from the testimony given at the first trial by one of Westinghouse's witnesses, Charles A. Turnbull. Rebuttal evidence must generally tend to refute the defendant's proof, and a trial judge's decision regarding the scope of rebuttal may not be reversed unless there has been a clear abuse of discretion. See Spesco, Inc. v. General Electric Co., 719 F.2d 233, 239-40 (7th Cir.1983); Martin v. Weaver, 666 F.2d 1013 (6th Cir.1981); cert. denied, 456 U.S. 962, 102 S.Ct. 2038, 72 L.Ed.2d 485 (1982); Hickok v. G.D. Searle & Co., 496 F.2d 444 (10th Cir.1974); 3 J. Weinstein & M. Berger, Weinstein's Evidence 611 at 611-30 8 n. 45 (1990); 6 J. Wigmore, Evidence Sec. 1873 (Chadboum Rev.1976). The trial court properly exercised that discretion in the present case because the excerpt from Turnbull's prior testimony merely stated in slightly different language what another defense witness said at the second trial.
 
 
 26
 As this court explained in its prior opinion, the plaintiffs contended that Westinghouse, instead of terminating all of the negotiations engineers, could have spread out seniority-based layoffs among the availability assurance and applications engineers as well. 832 F.2d at 261. To support this theory, the plaintiffs presented testimony that they were qualified to perform the work of the engineers in the other job progressions and that "the tasks could have been transferred without a change in plaintiffs' job description." Id.
 
 
 27
 As part of its effort to refute this theory at the first trial, Westinghouse called Turnbull, who "testified that the job tasks could not have been transferred without engaging in collective bargaining unless assumption of those tasks would have required no revision of the plaintiffs' job description." 832 F.2d at 261. At the second trial, Westinghouse called Robert McBurney, who held the position of Corporate Human Resource Director and who gave essentially the same testimony as Turnbull had at the first trial regarding the transfer of job tasks from the availability assurance engineers and the applications engineers to the negotiations engineers. Although McBurney's direct and cross-examination on this point were extensive, the similarity of his testimony to Turnbull's is illustrated by the following question and answer on direct examination:
 
 
 28
 Q. Can you transfer some duties that don't change the job description without bargaining?
 
 
 29
 A. If the duties are already covered in the job description and they are exactly the same kind of functions already performed.
 
 
 30
 Since McBurney's testimony was substantially the same as Turnbull's, the district court properly exercised its discretion in excluding the transcript of Turnbull's testimony.[9]
 
 
 31
 Finally, we hold that the district court did not err in refusing to give a third supplemental jury instruction on circumstantial evidence. When the trial judge initially instructed the jury, he included a full and accurate instruction on circumstantial evidence. After deliberating for some time, the jury reported that it could not agree and requested a clarification of the difference between types of evidence. In response, the judge again provided an accurate explanation of direct and circumstantial evidence. Plaintiffs' counsel did not object to this instruction but asked the court to make clear that the plaintiffs could sustain their burden of proof by circumstantial evidence, and the court did so. Following this clarification, one of the jurors asked whether age discrimination could be proven simply by showing that an employer had laid off older, qualified workers while retaining younger workers or whether there must be "an intention on the part of the company to discriminate." The court responded there must be proof that age was a determining factor in the employer's decision.
 
 
 32
 Plaintiffs' counsel objected that the court's answer "made it sound as if the employer had to make an affirmative statement and/or take affirmative action as demonstrated by 'direct evidence.' " The trial judge ruled, however, that he had already explained that an employer's intention could be inferred from circumstantial proof.
 
 
 33
 A trial judge's instructions to a jury must be "considered as a whole, to determine whether they are misleading or inadequate." Savarese v. Agriss, 883 F.2d 1194, 1202 (3d Cir.1989). Unless a trial judge misstates the law, the judge's rulings on points for charge may be reversed only if the judge committed an abuse of discretion. Id. In this case, the district court's instructions on direct and circumstantial evidence and on age discrimination were correct, and the court soundly exercised its discretion in refusing to give additional supplemental instructions covering the same matters that had already been explained fully and accurately. Having given correct and complete initial instructions, detailed supplemental instructions, an additional clarification requested by plaintiffs' counsel, and an accurate response to a juror's question, the district court was not required to do any more.
 
 
 34
 The judgment of the district court will therefore be affirmed.
 
 
 35
 MANSMANN, Circuit Judge, dissenting.
 
 
 36
 I respectfully dissent because I believe that the district court committed legal error in two respects: (1) in overturning the first jury's verdict in favor of the plaintiffs and in granting a new trial on the erroneous basis that the testimony of Henry Parzick was irrelevant and prejudicial and in excluding Parzick's testimony at the second trial; and (2) in the second trial, by responding to the jury's questions by language that was incomplete, confusing and misleading with respect to the plaintiffs' burden of proof in circumstantial cases of employment discrimination. I would reinstate the first jury's liability verdict for the plaintiffs and remand for a new trial on damages.
 
 I.
 
 37
 We have repeatedly emphasized that direct evidence in the form of a "smoking gun" is not required to prove discrimination. See Lockhart v. Westinghouse Credit Corp., 879 F.2d 43, 48 (3d Cir.1989) ("there is usually no 'smoking gun' evidence of intentional discrimination"); Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 895 (3d Cir.) (in banc), cert. dismissed, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987) ("[b]ecause the plaintiff may meet in alternate ways his burden to show that age was a determinative factor in his discharge, the plaintiff is entitled to show that the employer's explanation was pretextual by proffering evidence which is circumstantial or indirect as well as that which shows directly discriminatory animus"); Maxfield v. Sinclair Int'l, 766 F.2d 788, 791 (3d Cir.1985), cert. denied, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986) (employer statements to the employee that s/he is being fired because of age will often be difficult to obtain); Dillon v. Coles, 746 F.2d 998, 1003 (3d Cir.1984) (in employment discrimination cases direct evidence of the employer's motivation is unavailable or difficult to acquire).
 
 
 38
 The allocation of burdens of proof and persuasion provided in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), make clear that not only is "smoking gun" evidence not required, but a specially tailored burden-shifting mechanism is available to a plaintiff who cannot produce direct evidence. See Gavalik v. Continental Can Co., 812 F.2d 834, 853 (3d Cir.), cert. denied, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987) (proof of discrimination under ERISA employs Burdine burden-shifting mechanism where direct "smoking gun" evidence is unavailable).
 
 
 39
 I would hold the excluded testimony of Henry Parzick to be both highly relevant and admissible as an admission of a party opponent. The record as a whole provides the context in which the statement is relevant and lays a proper foundation for a party opponent admission under Federal Rule of Evidence 801(d)(2)(D). A more complete review of the evidence produced at the first trial[1] makes this clear.
 
 II.
 
 40
 Although the panel majority accurately summarizes the parties' contentions, additional facts are necessary to explain the relevance of the excluded testimony. While admitting that declining sales had necessitated the reduction-in-force, Westinghouse contended that it was precluded from transferring the plaintiffs to different job progressions by the collective bargaining agreement. Throughout the trial, Westinghouse asserted that it sought conscientiously to conform to the terms of the collective bargaining agreement in terminating the plaintiffs.
 
 
 41
 At the same time, Westinghouse manager James Borden testified that in deciding to eliminate the negotiation engineers' job progression, Westinghouse managers Borden and McIntyre had not considered plaintiffs' ages, pensions or salaries, however, Borden admitted he had recognized "years of service" as an "emotional issue". Borden testified that Westinghouse staff met weekly over a period of several months to consider reduction-in-force options. According to Borden, executive meetings were also held where Nick Kulokoski, manager of personnel relations, provided guidance on labor laws, the collective bargaining agreement, and compliance with discrimination laws. Despite these numerous meetings, Westinghouse failed to document its assertions that its decision to eliminate negotiation engineers was based solely on economic necessity and that factors such as age, pension, or salary had not been assessed.
 
 
 42
 Plaintiff Henry Parzick testified that on November 3, 1982, he and other negotiation engineers were called to a meeting with James Borden and their supervisor Thomas Kinlin at which they were informed of their termination. Parzick testified, "[o]ne point of interest after the meeting, I did speak to Mr. Kinlin. We just chatted, and he informed me that at [an executive management] meeting he attended ... a discussion was held regarding our termination." Parzick then related, over objection, the statements of the unnamed manager and Nick Kulokoski. Parzick also testified that only "management level or above" personnel attended executive meetings. Contrary to the majority's characterization of Kinlin's testimony, in answer to plaintiffs' counsel, Kinlin testified equivocally concerning this conversation, stating that he could have had a "confrontation with Kinlin, ... but that he could not remember it", however, Kinlin believed "Hank" (Henry Parzick) and did not believe he was lying when he testified. Given the verdict for the plaintiffs, it is highly probable that the jury believed Parzick rather than Kinlin.
 
 III.
 
 43
 Keeping in mind that "smoking guns" are rarely available to the plaintiffs in employment discrimination cases, the evidence proffered at the first trial was clearly sufficient to establish the relevance of Parzick's testimony. Borden established that staff and management held weekly meetings to discuss layoffs. While he asserted that the plaintiffs' ages were not considered, he conceded recognition of the emotional impact of the plaintiffs' long years of service when deciding to terminate the plaintiffs.
 
 
 44
 Borden also established that Nick Kulokoski, who allegedly stated "Let's give it a try. What do we have to lose?", advised management regarding compliance with the collective bargaining agreement and discrimination laws. Further, a compartmentalized differentiation between Westinghouse's alleged disregard of the collective bargaining agreement and age discrimination laws ignores the fact that age and seniority often are related and that pensions accrue according to both age and the collective bargaining agreement.
 
 
 45
 It was certainly for the jury to assess the credibility of Westinghouse's assertion that it never considered the financial implications of terminating groups of employees, specifically, relative savings in salary and pensions, which are tightly linked with age and seniority. Finally, even if one agrees with the majority that Parzick's testimony was not relevant to the plaintiffs' affirmative claim of age discrimination, it was undeniably relevant to challenge Westinghouse's defense that it could not have spread the reduction-in-force across the three engineering job progressions because the terms of the collective bargaining agreement precluded it from doing so. Because the plaintiffs could have met their burden by proving that Westinghouse's alleged business reasons were pretextual, Parzick's testimony was improperly excluded as irrelevant.
 
 
 46
 With respect to the district court's ruling that Parzick's testimony was unfairly prejudicial under Federal Rule of Evidence 403, I do not disagree with the panel majority's use of the abuse of discretion standard of review, but rather with the application of this standard to these facts. To be excluded under Rule 403, evidence must be unfairly prejudicial; mere prejudice cannot suffice because "virtually all evidence is prejudicial or it isn't material." Carter v. Hewitt, 617 F.2d 961, 972 n. 14 (3d Cir.1980). Quoting Weinstein, we have stated that evidence is unfairly prejudicial if it
 
 
 47
 "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish," or otherwise "may cause a jury to base its decision on something other than the established propositions in the case."
 
 
 48
 Carter, 617 F.2d at 972.
 
 
 49
 The declarant's statement mentioned "violating ... the labor laws of their contract" or "doing something illegal or against the contract." Even if the illegality referred to age discrimination and not the collective bargaining agreement, the district court found the statement substantially prejudicial because the jury may have viewed Westinghouse managers as a "lawless bunch."
 
 
 50
 But Westinghouse itself proffered the defense that it never considered plaintiffs' ages and at all times conformed to the terms and restrictions of the collective bargaining agreement. So it was certainly material to Westinghouse's defense that it at all times tried to conform to the collective bargaining agreement. Given that Westinghouse repeatedly emphasized such efforts to conform to the collective bargaining agreement, the plaintiffs' one bit of evidence that Westinghouse may not have so scrupulously concerned itself with the collective bargaining agreement cannot be said to violate the Carter standard.
 
 
 51
 Logically relevant and not unfairly prejudicial, Parzick's testimony was admissible as a party opponent admission under Federal Rule of Evidence 801(d)(2)(D). A statement qualifies as such an admission when
 
 
 52
 [it] is offered against a party and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.
 
 
 53
 This rule requires that the declarant be both authorized and acting within the scope of employment, when making an admission on behalf of the defendant. See Carden v. Westinghouse Electric Corp., 850 F.2d 996, 1002 n. 6 (3d Cir.1988). Both statements, "[m]aybe we're doing something illegal or against the contract" and "let's give it a try ... [w]hat do we have to lose?", were made by high level executives authorized to speak on behalf of Westinghouse. Both statements were made during a meeting limited to Westinghouse executives which concerned reduction-in-force options. See Cline v. Roadway Exp., Inc., 689 F.2d 481, 488 (4th Cir.1982) (admitting evidence by employees of statements made by "managers, some specifically identified," at managers meetings indicating some evidence of age discrimination). Cf. Carden, 850 F.2d at 1002 (supervisor's statement that "they wanted a younger person" failed to identify "they" as foundation for admission); Cedeck v. Hamiltonian Federal Sav. and Loan Ass'n, 551 F.2d 1136, 1138 (8th Cir.1977) (no admission because declarant unknown).
 
 
 54
 Moreover, one can infer from their presence at a meeting concerning the impending reduction-in-force that both the unnamed manager and Nick Kulokoski acted within the scope of their employment. For example, Nick Kulokoski, the personnel manager responsible for counsel on legal issues, acted within the scope of his employment when he evidenced Westinghouse's attitude: "Let's give it a try. What do we have to lose?" Westinghouse also cannot "compartmentalize this executive as if he had nothing more to do with company policy than the janitor or watchman". Lockhart, 879 F.2d at 54 (rejecting limited view that a manager not associated with plaintiff's division could not make admission for company).
 
 
 55
 Where the employer is a corporate entity, we have recognized that a manager's comments may not be avoided if later disadvantageous to its litigation posture. Id. ("[w]hen a major company executive speaks, "everybody listens" in the corporate hierarchy ..."). Contra Staheli v. University of Mississippi, 854 F.2d 121, 127 (5th Cir.1988) (professor uninvolved in tenure decision could not make admission for school concerning denial of tenure); Hill v. Spiegel, Inc., 708 F.2d 233, 237 (6th Cir.1983) (admission made by managers uninvolved in decision to discharge plaintiff made outside the scope of their agency). These facts suffice to lay the foundation that these managers acted within the scope of their employment.
 
 
 56
 Both the unnamed declarant's and Nick Kulokoski's statements constituted party-opponent admissions.[2] The admissibility of a Rule 801(d)(2)(D) admission does not depend on the plaintiff's ability to name a corporate officer making a damaging admission on behalf of the corporation; rather, identification which establishes the requisite foundation suffices. See Dudding v. Thorpe, 47 F.R.D. 565, 571 (W.D.Pa.1969). The name of the unnamed declarant, given the fact that he commented upon the legality of the termination decision, is unnecessary because the characteristics attributable to the declarant based on the context of the statement satisfy the requirements for a party opponent admission. Id. (authorized statement of an unnamed nurse who observed the alleged tort in the recovery room admissible against the hospital).
 
 
 57
 Corporations do not proclaim boldly their intent to discriminate and rarely embrace discriminatory statements made by their managers. Yet these people are the ones who act for the corporation and because corporate entities can speak only through employees, managers' articulations may be the only ones evidencing corporate discriminatory intent. If corporate parties are not immune from making Rule 801(d)(2)(D) admissions, then managers' statements made in the scope of their employment must be given the effect of an admission.
 
 IV.
 
 58
 To reverse for a confusing or misleading jury instruction, we "must be left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations". United States v. Traitz, 871 F.2d 368, 383 (3d Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 78, 107 L.Ed.2d 44 (1989). I am left with such a doubt given the circumstances of the supplemental instruction received by the jury within ten minutes of its defense verdict.
 
 
 59
 The initial charge instructed the jury on the burden of proof as well as direct and circumstantial evidence. After retiring to deliberate at 12:40 p.m., the jury returned with questions at 4:20 p.m.[3] The court correctly reinstructed on the difference between direct and circumstantial evidence, whereupon the jury was dismissed briefly. After the jury reentered at 4:33 p.m., the court gave the following charge:
 
 
 60
 [In answer to the first question:] No. If it was pure happenstance, if there was no design at all, no reason why these men's names should come out and they were older, if it was pure happenstance as I say and not by any design, no, Westinghouse would not be liable.
 
 
 61
 But if you analyze it, from the very definition that I gave you, it means that that must have been a part of the intention of Westinghouse, because I said to you that age must be a "determining factor." That means, of necessity, that the employer must have determined that, because you can't have a "determination" in a vacuum. It has to be somebody's determination to make it a "determining factor."
 
 
 62
 So, therefore, it must be one of the things that influenced Westinghouse. In fact, the thing, one of the things that determined Westinghouse to do the, to act in the way it did.
 
 
 63
 [In answer to the second question:] No. Because the plaintiff has the burden of proof as I mentioned to you, and if the plaintiff hasn't proven why they did this, then the plaintiff has not sustained the burden of proof.
 
 
 64
 Plaintiffs' counsel then asked the court to reiterate that the plaintiffs could meet their burden of proof with circumstantial evidence. The court complied.[4]
 
 
 65
 At this point, another juror asked an additional question "hav[ing] to do with the actual definition of age discrimination": "If ... Westinghouse laid off older workers and retained younger ones, and if they were all fully qualified, [etc.], is that ... in and of itself age discrimination?" In response, the court stated: "If the age ... was "a determining factor" in making that decision, that would be age discrimination." The juror responded: "but ... if it was not known, it was decided by the individual making this consideration that it was not known why the decision or how the decision was made, why the decision was made to do "this versus this," the mere fact of laying off the older workers and retaining the younger workers, is that age discrimination? You are saying that that is not, by itself. There has to be an intention on the part of the company ... to discriminate on the basis of age." The court: "The employer must consider age to be a determining factor in reaching it's [sic.] decision." Plaintiffs' counsel obtained an exception, articulating his concern that the jury "ha[s] left here with a feeling that they need [to] find direct evidence of the employer's intention, ... and I would ask ... that that question ... be answered ... to include that they can find "intention" and they can find "intentional action" both through direct and circumstantial evidence."
 
 
 66
 In my view, this last question evidences at least one juror's continuing confusion over the relationship between types of evidence and the burden of proof. Because the jury returned a defense verdict within ten minutes of retiring after this last question, I am left with a "substantial and ineradicable doubt" as to whether the instructions allayed the jury's evident confusion concerning the type of evidence required to meet the plaintiffs' burden of proof. Although the district court repeatedly defined circumstantial evidence, I believe that at least one juror was confused as to whether direct evidence was needed to show Westinghouse's discriminatory intent and therefore that the jury may have rendered a defense verdict even though it concluded that Westinghouse's explanation was pretextual.
 
 
 67
 Based on the foregoing I would summarize my departure from the majority as follows. At the first trial, although I agree with the panel majority that Westinghouse should have had the opportunity to show mitigation of damages, I would reinstate the verdict reached as to liability because I believe the statements made by Westinghouse managers were admissions relevant to age discrimination.
 
 
 68
 With respect to the second trial, I would reverse because the district court precluded the highly relevant admissible testimony of Henry Parzick and because I am convinced that the charge confused and misled the jury such that the jury believed that the plaintiffs had to prove discriminatory intent by direct evidence.
 
 
 
 [1]
 See also Bhaya v. Westinghouse Corp., 624 F.Supp. 921 (E.D.Pa.1985) (addressing damages and attorney's fees following the first trial)
 
 
 [2]
 Kinlin testified that he did not attend any management meeting at which the termination of the negotiation engineers was discussed, and he stated that he had no recollection of the conversation with Parzick
 
 
 [3]
 The district court did not rule that the out-of-court statement was irrelevant but only that it "probably was irrelevant" (709 F.Supp. at 603). We note, however, that the trial court's ruling on relevancy would have been reviewable only for an abuse of discretion. Pfeiffer v. Marion Center Area School District, 917 F.2d 779, 781-82 (3d Cir.1990)
 
 
 [4]
 The dissent contends (dissenting typescript 5) that evidence of Westinghouse's willingness to risk a break of its collective bargaining agreement was relevant to rebut Westinghouse's defense that the collective bargaining agreement prohibited the company from spreading the reduction-in-force across the three engineering job progressions. Plaintiffs, however, never advanced this theory of relevancy. A trial judge's assessment of relevancy cannot be reversed on appeal based upon an entirely new theory not apparent on the face of the evidence. See Campbell v. Nordco Products, 629 F.2d 1258, 1264 (7th Cir.1980); J. Weinstein & M. Berger, Weinstein's Evidence 401 at 401-57 to 401-58 (1990) ("Except in a case where the evidence sought to be introduced is relevant on its face, the court may without error sustain an objection to its introduction if the attorney fails to explain its significance.") (footnotes omitted); 1 J. Wigmore, Evidence Sec. 17 at 782 (Tillers rev. 1983)
 
 
 [5]
 Although evidence that Westinghouse management was willing to risk a violation of the collective bargaining agreement or "labor laws" does not appear to fall directly within Fed.R.Evid. 404(b), this evidence is closely akin to evidence falling within this rule. Evidence falling within Rule 404(b) must be carefully analyzed under Rule 403. See Fed.R.Evid. 404(b) advisory committee's note
 
 
 [6]
 As previously noted, plaintiffs claimed that Westinghouse, instead of terminating all the negotiation engineers, should have spread out necessary layoffs among the members of a larger pool that included the availability assurance and applications engineers. In part for the purpose of showing that any damages should be limited, Westinghouse sought to introduce evidence that some availability assurance engineers had been laid off shortly after plaintiffs, but the district court sustained plaintiffs' objections. In ruling on Westinghouse's new trial motion, however, the district court recognized that this evidence was relevant on the issue of damages because it tended to show that plaintiffs might have been properly laid off a short time later even if plaintiffs' suggestion about spreading out the layoffs had been followed (709 F.Supp. at 605)
 On appeal, plaintiffs assert that some younger engineers were never laid off. The thrust of plaintiffs' argument appears to be that evidence of the layoffs of some availability assurance engineers was not relevant because that evidence did not conclusively show that plaintiffs would have been laid off at that time. This argument is fallacious, however, because evidence need not be conclusive in order to be relevant. See Fed.R.Evid. 401.
 
 
 [7]
 Contrary to plaintiffs' contention on appeal, it is apparent that the court at the second trial adhered to its earlier ruling that the out-of-court statements should be excluded under Rule 403. Counsel for Westinghouse argued this point at length, and the court sustained her objection
 During argument, the district court appeared to question whether Kinlin's out-of-court statement was inadmissible on another ground, i.e., lack of sufficient proof of the preliminary facts (see Fed.R.Evid. 104) necessary for introduction of that statement as an admission under Fed.R.Evid. 801(d)(2)(D). Because we conclude that the district court's exclusion of this evidence under Rule 403 was proper, we need not address this alternative ground for exclusion.
 
 
 [8]
 At the second trial, plaintiffs attempted to tie the out-of court statements to the subject of age. Parzick testified that after he was notified of his termination, he and Kinlin talked about "the differences in ages." Specifically Parzick testified:
 I told Mr. Kinlin, I said: "How can they do that to us old-timers? How can they really get rid of us old-timers?" And he said: "Hank, I really don't know ..."
 This additional testimony does not fundamentally alter the balance under Rule 403 or demonstrate that the district court's ruling was arbitrary or irrational. This new testimony indicates that Parzick raised the topic of age by referring to the negotiation engineers as "old timers." Arguably it indicates that Kinlin discussed the topic of age in his alleged conversation with Parzick. But this new testimony provides no evidence that age was discussed at the management meeting. Without such a link, the statements at that meeting still have little if any probative value.
 
 
 [9]
 Before excluding the Turnbull transcript excerpt on the ground that it was essentially the same as McBurney's testimony, the district court stated that plaintiffs had not given notice of their intention to offer Turnbull's prior testimony, as required by Rule 21 of the Rules of the United States District Court for the Eastern District of Pennsylvania. Because we hold that Turnbull's prior testimony was properly excluded on another ground, we need not address the effect of Local Rule 21
 
 
 [1]
 Because I would hold that the district court erred in granting a new trial on this issue, I would not have the court reach the question of whether the district court properly excluded this testimony at the second trial. Obviously, I would hold it error for the district court to have subsequently excluded this testimony at the second trial
 
 
 [2]
 Kinlin's declaration to Parzick also satisfies Rule 801(d)(2)(D)'s foundation requirements because Kinlin's statement to Parzick coincided with the meeting at which Parzick was terminated
 
 
 [3]
 As read into the record by the district court, these questions were:
 
 
 [1]
 "We are split on our verdict. However, there may be a change of opinion if Westinghouse is still guilty if they [sic.] discriminated by chance rather than by design"
 
 
 [2]
 "If a juror says that he does not know why Westinghouse made the decision to layoff employees the way they [sic.] did, should he vote to convict [sic.]?"
 
 
 [3]
 "What is evidence? Please define the word evidence."
 
 
 [4]
 The district court charged: "Circumstantial evidence is just as good as direct evidence, provided it leads you to, to a conclusion 'by a preponderance of the evidence.' In other words, it leads you to balance the scales; balances the scales or unbalances them.... You can't speculate; no, of course."