**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-2910

_____

JAHMAL PHOENIX,
                              Appellant
v.

COATESVILLE AREA SCHOOL DISTRICT
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:15-cv-00072)
District Judge: Honorable Gerald J. Pappert
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on Tuesday March 7, 2017

Before:  SMITH, *Chief Judge*, HARDIMAN, and KRAUSE, *Circuit Judges*

(Filed: March 20, 2017)

_____

OPINION[*]

_____

KRAUSE, *Circuit Judge.*

In an employment discrimination action alleging constructive discharge on the

basis of race, Jahmal Phoenix appeals the District Court's evidentiary rulings and denial

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

of his motion for a new trial following a jury verdict in favor of his former employer, the Coatesville Area School District ("Coatesville"). For the reasons that follow, we will affirm.

## I. Background

Phoenix, an African-American male, began working for Coatesville in 2007 as a computer applications teacher of middle school students. In 2011, Coatesville eliminated the computer applications program from its middle school curriculum, and, as a result, Phoenix was reassigned to teach math, despite being untrained to do so. Although he excelled as a computer teacher, he struggled to meet expectations in his math courses. In late 2012, Phoenix was placed on a performance improvement plan, and in January 2013, the Principal of the middle school gave Phoenix an unsatisfactory performance review, the first he had received during his tenure with Coatesville. When he learned a few months later that he would soon receive another unsatisfactory performance review and would be terminated, Phoenix resigned.

That August, a Coatesville employee discovered racist text messages on the cell phone of Richard Como, the Superintendent of Coatesville and the official primarily responsible for the decision to terminate Phoenix. In addition to being highly offensive, Como's text message exchanges with another administrator suggested Como was fraudulently misusing Coatesville funds, which prompted a grand jury investigation into Como and certain other high-ranking administrators. After learning of the texts when the story was reported in the newspaper, Phoenix brought race discrimination claims against

Coatesville under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. §§ 951-963.[1]  These claims were tried in the District Court; the jury returned a verdict in Coatesville's favor; and the District Court denied Phoenix's motion for a new trial. Phoenix now appeals, challenging the District Court's evidentiary rulings and its denial of his motion for a new trial.

## II.     Discussion[2]

Phoenix contends the District Court erred in (1) excluding admissible evidence central to his claims, (2) permitting hearsay and speculative testimony by Coatesville's sole witness, and (3) denying Phoenix's motion for a new trial.  We address each ruling in turn.

### A.     Excluded Evidence

Phoenix first argues the District Court erred in excluding four categories of documents: all but one of Como's text exchanges, an independent internal report commissioned by the Board of Coatesville (the "Board Report"), a grand jury report on Coatesville administrators (the "Grand Jury Report"), and evidence of spoliation efforts by Coatesville.  Under Federal Rule of Evidence 403, relevant evidence may be excluded "if its probative value is substantially outweighed by [the] danger of . . . unfair prejudice,

---

[1] Phoenix also brought a claim pursuant to 42 U.S.C. § 1981 that is not at issue in this appeal.

[2] The District Court had subject-matter jurisdiction over Phoenix's Title VII claim pursuant to 28 U.S.C. § 1331 and over Phoenix's PHRA claim pursuant to 28 U.S.C. § 1367.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. We review a district court's evidentiary rulings for abuse of discretion, *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002), and we find none here.

We begin with Como's text messages. The District Court allowed into evidence one exchange between Como and another administrator that expressly referenced Phoenix—an exchange that contained offensive racial epithets and reflected Como's involvement in Coatesville's firing decisions. But the District Court excluded the other exchanges, agreeing with Phoenix that they were "vile" and "racist," App. 5, but concluding that they were not directly relevant to Phoenix's discharge and that, under Rule 403, any probative value was substantially outweighed by the likelihood of unfair prejudice and confusion of the issues.[3]

In making that determination, the District Court considered that "[t]he jury heard plenty of evidence of Como's use of racial epithets, in relation to Phoenix as well as others, and his control of Coatesville's hiring and firing process." App. 14. That evidence included testimony from Coatesville's Director of Middle School Education that Como used racial epithets frequently, and that Phoenix was terminated, in her opinion,

---

[3] Although Phoenix contends the District Court erred in performing its Rule 403 balancing regarding the text messages before trial, Phoenix fails to assert the District Court did not have a complete record before it on this issue. *See Brown v. Monsanto Co. (In re Paoli R.R. Yard PCB Litig.)*, 916 F.2d 829, 859-60 (3d Cir. 1990). In fact, the District Court reviewed and considered all of Como's racist text messages and, as discussed, allowed one exchange into evidence. Thus, we perceive no error in the District Court's decision to rule pre-trial.

because of his race, as well as documentary evidence and witness testimony that Como was in charge of personnel decisions in Coatesville, a point Coatesville did not refute. Having "carefully balanced the relevance, probative value and likely prejudicial impact of Como's overall conduct and allowed into evidence everything Phoenix needed to make his point" that Como was racist and responsible generally for employment decisions, App. 14, the District Court did not abuse its discretion in excluding racist texts that were not directly relevant to the decision to terminate Phoenix, *see United States v. Bailey*, 840 F.3d 99, 118 (3d Cir. 2016).

Phoenix's challenges to the exclusion of the Board Report and the Grand Jury Report fare no better.[4] Both reports related to criminal investigations into the conduct of senior Coatesville administrators, including, *inter alia*, their misuse and misappropriation of Coatesville funds and obstruction of justice. The Board Report also evaluated the Board's response following its discovery of Como's offensive text messages. As the District Court observed, those issues are irrelevant to whether Coatesville terminated Phoenix due to racial animus and would likely have confused the jury and unduly prejudiced Coatesville if admitted. We therefore perceive no abuse of discretion in their exclusion. *See Forrest v. Beloit Corp.*, 424 F.3d 344, 355, 360 (3d Cir. 2005).

---

[4] As further evidence of the careful balancing it conducted in this case, the District Court did admit two small excerpts from these reports: (1) the text message exchange above, excerpted from the Grand Jury Report for ease of authentication, and (2) one sentence from the Board Report admitted for the purpose of demonstrating Como's decision-making power.

Finally, Phoenix argues the District Court erred in precluding evidence of spoliation, that is, Coatesville's "efforts to conceal and destroy the text messages" after they were originally discovered. App. 19. However, we agree with the District Court that "[a]ny purported efforts to conceal or destroy the text messages, the essential contents of which were repeated for the jury *ad nauseum*, were completely irrelevant to whether or not Coatesville terminated or constructively discharged Phoenix because of his race." App. 19. The District Court thus was well within its discretion in excluding testimony and documentary evidence concerning spoliation. *See Forrest*, 424 F.3d at 355.

## B.    Testimonial Evidence

Phoenix next asserts the District Court erred by permitting hearsay and speculative testimony from Coatesville's sole witness, the middle school Principal, relating to complaints the Principal had heard about Phoenix failing to supervise students on a bus and showing frustration in the classroom on a particular occasion that caused a student to cry. Even assuming this testimony was admitted in error, however, we see no reason to question the jury's verdict because "it is highly probable that the error[ ] did not affect the outcome of the case." *Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 228 (3d Cir. 2008) (alterations in original) (citations omitted); *see also* Fed. R. Civ. P. 61.

We conclude any error here was harmless for two reasons. First, the majority of the Principal's contested testimony is cumulative of two disciplinary memoranda that were admitted as evidence at trial and that are not challenged on appeal. The

6

memoranda, both addressed from the witness to Phoenix, portray the school bus incident and the subsequent classroom episode as they were described at trial. The only testimony not encompassed by the memoranda is the witness's description of the crying student who reported the classroom incident, an inconsequential detail that cannot be said to be "substantively important, inflammatory, repeated, emphasized, or unfairly self-serving" to Coatesville. *Hirst*, 544 F.3d at 228 n.10 (quoting *Doty v. Sewall*, 908 F.2d 1053, 1057 (1st Cir. 1990)).

Second, considering the record as a whole, Coatesville introduced more than enough other evidence regarding Phoenix's poor performance and unprofessional behavior for "us to conclude that [Coatesville] was able to clearly and convincingly prove the elements of its case without reliance on the tainted evidence." *Langbord v. U.S. Dep't of Treasury*, 832 F.3d 170, 196 (3d Cir. 2016). Indeed, two of Phoenix's supervisors testified at length about these issues, and Phoenix himself conceded at trial that he underperformed as a math teacher and was once suspended for unprofessional behavior. Given the "substantial amount of other evidence" that Coatesville's decision to discharge Phoenix was not motivated by racial animus, *Walker v. Horn*, 385 F.3d 321, 336 (3d Cir. 2004), there is a "high probability" the District Court's admission of the Principal's testimony "did not contribute to the verdict," *Langbord*, 832 F.3d at 196. Thus, even if error, it would not warrant relief.

**C.       Motion for a New Trial**

Lastly, Phoenix contests the District Court's denial of his motion for a new trial, which we review for abuse of discretion, *see Mancini v. Northampton Cty.*, 836 F.3d 308, 314 (3d Cir. 2016), affording "[p]articular deference" where, as here, the decision rests on evidentiary rulings that were themselves "entrusted to the trial court's discretion," *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 187 (3d Cir. 1990).  Because Phoenix's motion was premised on precisely the same evidentiary rulings he challenges on appeal, his final argument is unavailing.  In its thorough and carefully reasoned opinion, the District Court addressed each of Phoenix's evidentiary contentions, and thus, for the reasons previously stated, we perceive no abuse of discretion.  *See id.*

**III.    Conclusion**

For the foregoing reasons, we will affirm the orders of the District Court.