**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-3001
_____

AIDA ACEVEDO,
                                        Appellant

v.

CITY OF READING;
EDDIE MORAN, (In his individual capacity);
NATANAEL RIVERA COLON, a/k/a Nate Rivera (In his individual capacity only)
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5:23-cv-01224)
District Judge: Honorable Karen S. Marston
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on September 9, 2025

Before: CHAGARES, *Chief Judge*, PORTER, and ROTH, *Circuit Judges.*

(Filed: November 24, 2025)

_____

OPINION[*]
_____

PORTER, *Circuit Judge*.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Aida Acevedo sued the city of Reading, PA ("the City"), its mayor, and a former City employee, asserting sex discrimination and retaliation claims. The District Court granted summary judgment against Acevedo on her retaliation claim and § 1983 claim, and it denied her motion for a new trial on her discrimination claim against the City. Acevedo raises several issues on appeal, but we will affirm.

I

Acevedo began working as the human resources director for the City in 2020. She reported to Mayor Eddie Moran. Natanael Rivera Colon, another City employee, was Moran's long-time friend and special assistant.

Acevedo alleges that, shortly after starting her job, Rivera began making inappropriate sexual comments that continued for months. She says she reported some of these incidents to the mayor's chief of staff, but that no formal action was taken to punish or deter Rivera. On August 2, 2021, Rivera texted Acevedo a "picture of semen in the palm of his hand," accompanied by the statement "15 minutes ago. What a waste." Joint Appendix ("J.A.") 100. Besides reporting the photo to the chief of staff, Acevedo showed it to several friends and colleagues, including former City employee Dana Rodriguez.

Although Acevedo reported Rivera's behavior, she asked her supervisors not to take action, fearing retaliation because of Rivera's close relationship with Moran. Despite that request, the City's managing director, Abe Amoros, retained an outside law firm ("McNees"), to investigate Rivera's conduct. After Amoros showed the photo to Moran, Moran immediately had Rivera removed from the building and suspended pending the investigation results. While the investigation was ongoing, Acevedo decided that she'd

2

had enough and tendered her resignation, with an effective last day of December 15, 2021.

On or about December 8, Moran summoned Acevedo to his office. He informed her that the investigation had concluded and that Rivera had been fired. He also asked Acevedo if she would rescind her resignation. Acevedo agreed.

After these events, Acevedo alleges that she was subject to hostility at work, and that Moran and Amoros "stripped her of some job duties and responsibilities." J.A. 101. She filed a charge of discrimination and retaliation with the EEOC and informed Moran and Amoros of the charges. Two days later, Acevedo was suspended for alleged misconduct: lying to City officials, demeaning staff, failing to complete work, disregarding legal advice, flouting written directives, and engaging outside counsel without authorization. McNees was brought in once again, this time to investigate Acevedo's conduct. Though Acevedo contested the allegations, McNees's final report substantiated all but one of the alleged violations. Acevedo was terminated soon after.

Acevedo filed suit in the Eastern District of Pennsylvania, asserting discrimination and retaliation claims against the City under Title VII and the Pennsylvania Human Relations Act, and Fourteenth Amendment retaliation and sex discrimination claims under 42 U.S.C. § 1983 against Moran and Rivera. The District Court granted summary judgment for the defendants on all claims but the discrimination claim against the City. That claim, premised on an alleged hostile work environment, proceeded to a jury trial. During that trial, the District Court excluded a line of testimony from Rodriguez as hearsay. The jury returned a verdict for the City. The District Court denied Acevedo's

motion for a new trial that contested the hearsay ruling.

Acevedo timely appealed. She challenges (1) the District Court's exclusion of the Rodriguez testimony, (2) the denial of her motion for a new trial, (3) the grant of summary judgment as to the retaliation claim against the City, and (4) the grant of summary judgment as to the claim against Rivera.

## II[1]

"We review a District Court's decision to admit or exclude evidence for abuse of discretion, although our review is plenary as to the district court's interpretation of the Federal Rules of Evidence." *United States v. Duka*, 671 F.3d 329, 348 (3d Cir. 2011) (quoting *United States v. Riley*, 621 F.3d 312, 337 (3d Cir. 2010)).

Likewise, "[t]he standard of review on a motion for a new trial is abuse of discretion, except where a district court bases its denial of the motion on an application of law, in which case an appellate court's review is plenary." *McKenna v. City of Philadelphia*, 582 F.3d 447, 460 (3d Cir. 2009).

Our review of a district court's grant of summary judgment is plenary, applying the same standard as the district court. *Qin v. Vertex, Inc.*, 100 F.4th 458, 469 (3d Cir. 2024). "Under that standard, summary judgment is appropriate only if, construed in the light most favorable to the non-moving party, the record shows that there is no genuine

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

dispute of material fact and that the moving party is entitled to judgment as a matter of law." *Id.*; Fed. R. Civ. P. 56(a).

III

A

Acevedo's counsel called Rodriguez to the stand on the third day of trial. He showed Rodriguez the photo of Rivera's hand holding semen and asked her to "just describe [Acevedo's] physical or emotional condition as you could see it" when showing the picture. J.A. 74. Rodriguez responded by purporting to quote Acevedo's words at the time: "[s]he was like, do you believe something like this? No. Do you believe he does something like this to the HR manager[?]" J.A. 74. Defense counsel then made a hearsay objection, which the Court sustained.

The Court concluded that Rodriguez's testimony was hearsay offered "for the truth of how [Acevedo] reacted to the photograph" and that neither the excited utterance nor the then-existing mental state hearsay exceptions applied. J.A. 74. The Court likewise excluded Acevedo's counsel's follow-up questions: "Did Ms. Acevedo tell you how she was feeling at that moment?" and "Did she tell you why she was upset?" J.A. 75. Rodriguez ultimately testified about more general changes she observed in Acevedo's demeanor following the incident.

Hearsay is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Federal Rule of Evidence 803 enumerates exceptions to that general definition. At issue here is the state of mind exception, which excludes from

5

hearsay "[a] statement of the declarant's then-existing state of mind . . . or emotional, sensory, or physical condition . . . but not including a statement of memory or belief to prove the fact remembered or believed." Fed. R. Evid. 803(3).

As she did before the District Court, Acevedo argues that Rodriguez's proposed testimony was either (1) not hearsay, because it was not offered for the truth of the matter asserted; or (2) should have been admitted under the state of mind exception. As to the first point, Acevedo argues that Rodriguez's testimony "wasn't tendered to prove the harassment took place but was offered to show Acevedo's state of mind at the recounting of what she had experienced and the effect it had on her." Appellant's Br. at 28. Like the District Court, we find this argument unavailing. Pointing to a different reason for the testimony (i.e., Acevedo's feelings rather than whether the harassment occurred at all) does not overcome the rule against hearsay unless the articulated reason serves a "legitimate non-hearsay function." *United States v. Price*, 458 F.3d 202, 208 (3d Cir. 2006). Here, it does not. Whether those statements fall within the state of mind exception is a separate question, to which we now turn.

The District Court concluded that Rodriguez's proposed testimony did not fit within the state of mind exception because Acevedo's statements to Rodriguez—describing how Acevedo felt when she received the photo—occurred some indeterminate time after that underlying event. *See* J.A. 2147–48 (Acevedo testifying that she could not recall if she showed the photo to Rodriguez on the same day she received it). But contemporaneity is built into the text of the Rule, confined as it is to "then-existing" state of mind. Fed. R. Evid. 803(3). Like several other hearsay exceptions, the state of mind

6

exception requires it. *See, e.g.*, *United States v. Hernandez*, 176 F.3d 719, 726 (3d Cir. 1999) ("[T]here are times when a state of mind, if relevant, may be proved by contemporaneous declarations of feeling or intent." (citation modified)); 30B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6834 (2025 ed.) ("Statements communicating a prior state of mind are not admissible under Rule 803(3). Only statements about what the declarant is feeling at the time the statement is made can be admitted under the rule. In other words, qualifying statements must concern what the declarant 'was thinking in the present.'"). As the District Court noted, this requirement furthers the principles justifying the exception—contemporaneous state of mind utterances are believed to be more reliable or sincere because the declarant has not had time to reflect and possibly "fabricate or misrepresent" her thoughts. *United States v. Reyes*, 239 F.3d 722, 743 (5th Cir. 2001); *see* Wright & Miller, § 6832.

The District Court afforded Acevedo's counsel a chance to "lay the foundation" to satisfy the contemporaneity requirement. J.A. 2564. Counsel failed to do so (and, in fact, argued that no contemporaneity was required at all). The District Court did not abuse its discretion in concluding that Rodriguez's proposed testimony (1) was excludable as hearsay; and (2) was not admissible under the state of mind hearsay exception.

B

Acevedo's motion for a new trial turned on her evidentiary challenge regarding Rodriguez's testimony. After confirming its prior hearsay ruling, the District Court further held that even if that ruling had been in error, such error would have been harmless. *See Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 228 (3d Cir. 2008)

7

("Discretionary evidentiary rulings will give rise to reversible error only where 'a substantial right of the party is affected.'" (quoting *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 180 (3d Cir. 2000))). We afford these conclusions "[p]articular deference" where, as here, they rest on evidentiary rulings that were themselves "entrusted to the trial court's discretion." *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 187 (3d Cir. 1990). We find no abuse of discretion in the District Court's denial of Acevedo's motion for a new trial.

## C

### 1

Acevedo asserted her retaliation claim against the City believing that she was fired because of protected activities—complaining about Rivera's conduct and filing a charge with the EEOC—rather than because of the independent investigation that revealed policy violations. Like her argument before the District Court, Acevedo contends on appeal that the independent investigation was pretext, "simply designed to provide cover for a planned retaliatory firing." Appellant's Br. at 8.

We analyze claims for retaliation under the three-step burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). First, "the employee bears the initial burden of establishing a *prima facie* case of retaliation." *Id.* Second, if the employee clears step one, "the burden of production shifts to the employer to articulate some legitimate, non-retaliatory reason for the adverse employment action." *Id.* Third, if the employer clears step two, "the burden of production returns to the employee, who must

8

now show, by a preponderance of the evidence, that 'the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" *Id.* (quoting *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006)). The District Court determined that each party met its burden under the first two steps of the *McDonnell Douglas* framework, but that Acevedo could not meet her burden at step three. J.A. 25–38. She challenges only that determination.

Once the employee establishes prima facie retaliation and the employer articulates a legitimate, non-retaliatory reason for the adverse employment action, the employee satisfies step three of the *McDonnell Douglas* framework by demonstrating that the articulated reason was pretextual. To establish pretext, the employee must present evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

Acevedo does not challenge the legitimacy of the independent McNees investigation, which resulted in the City's articulated reason for terminating her. Rather, Acevedo's argument boils down to this: Because her protected activities were a but-for cause of her termination, the District Court erred in granting summary judgment for the City. But Acevedo has not shown that "her protected activity made a difference" in the City's decision to terminate her employment. Appellant's Br. at 43.

Acevedo's brief spills a lot of ink discussing certain witness testimony, the temporal proximity of her protected activity and the adverse employment action, her own

9

declaration, and the severity of the City's decision to terminate her employment. But none of those arguments seriously cast doubt on the independence and accuracy of the McNees investigation, which found that Acevedo committed multiple violations of two separate City policies. The City fired her based on those policy violations alone. The record contains no material facts creating a genuine dispute that Acevedo's protected activities made a difference in her termination, even construing those facts most favorably to Acevedo. Put simply, even if Acevedo did not report Rivera and did not file an EEOC charge, the outcome here would have been the same. We agree with the District Court that the City was entitled to summary judgment.

2

Finally, Acevedo challenges the District Court's decision on her § 1983 claim for sexual harassment. On appeal, Acevedo renews her argument that Rivera was "cloaked with *de facto* authority over Acevedo" and therefore acted "under color of state law" when he harassed her. Appellant's Br. at 45 (emphasis and capitalization omitted).

To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To be liable, the defendant must "have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 23 (3d Cir. 1997) (quoting *West*, 487 U.S. at 49) (internal quotation marks omitted). A defendant who lacks a "formal title of supervisor" can still be liable if his "regular duties

10

nonetheless include a virtually identical supervisory role." *Id.*

For the same reasons discussed by the District Court, the record shows that Rivera was not clothed with the authority of state law when he harassed Acevedo. Acevedo concedes that Rivera had no formal supervisory authority. And the record does not support Acevedo's assertion that Rivera exercised de facto control over her. In fact, Acevedo has shown no instance where Rivera exercised (or attempted to exercise) supervisory authority over her. Rivera's alleged "close friendship" with the mayor—even if it did imbue him with perceived influence generally—does not itself support Acevedo's contention that Rivera had any de facto supervisory control over her as the human resources director in particular.

\* \* \*

For all these reasons, we will affirm the District Court's order denying a new trial and its grant of summary judgment.