# United States Court of Appeals for the Federal Circuit

---

**OSSEO IMAGING, LLC,**
*Plaintiff-Appellee*

**v.**

**PLANMECA USA INC.,**
*Defendant-Appellant*

---

2023-1627

---

Appeal from the United States District Court for the District of Delaware in No. 1:17-cv-01386-JFB, Senior Judge Joseph F. Bataillon.

---

Decided: September 4, 2024

---

SETH OSTROW, Meister Seelig & Fein PLLC, New York, NY, argued for plaintiff-appellee. Also represented by ROBERT FEINLAND.

WASIF QURESHI, Jackson Walker LLP, Houston, TX, argued for defendant-appellant. Also represented by LEISA TALBERT PESCHEL; BLAKE DIETRICH, Dallas, TX; MICHAEL J. FLYNN, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE.

---

Before DYK, CLEVENGER, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

This case presents a question about the qualifications necessary to provide expert testimony from the perspective of one of ordinary skill in the art.

Planmeca USA Inc. ("Planmeca") appeals the District of Delaware's denial of its motion for judgment as a matter of law (JMOL) upholding the jury's verdict that: (1) Planmeca infringes Osseo Imaging, LLC's ("Osseo") U.S. Patent Nos. 6,381,301, 6,944,262, and 8,498,374; and (2) certain claims of the '301 patent, '262 patent, and '374 patent are not invalid for obviousness. The district court did not err in holding that Osseo's expert testimony and other evidence provide substantial evidence supporting the jury's verdict of infringement. Likewise, substantial evidence supports the jury's verdict of nonobviousness of the challenged patent claims. We thus affirm.

## BACKGROUND

Planmeca develops and manufactures ProMax 3D imaging systems that generate and display, with Planmeca's Romexis software, a 3D model to a user. Osseo sued Planmeca alleging that its ProMax 3D imaging systems (the "Accused Systems") infringe the '301 patent, '262 patent, and '374 patent (collectively, the "Asserted Patents"). The Asserted Patents relate to orthopedic imaging systems that use X-ray beam techniques to create tomographic and/or densitometric models of a scanned object.

A jury trial was held in August 2022. The jury was instructed to determine the requisite level of ordinary skill and was told that a person of ordinary skill in the art would have a bachelor's degree in electrical or computer engineering, plus 3 to 5 years working in a diagnostic imaging environment that uses the techniques described in the Asserted Patents. During cross-examination of Osseo's technical expert, Dr. Omid Kia, Planmeca sought to demonstrate that

Dr. Kia did not have the requisite 3 to 5 years of diagnostic imaging experience in 1999, the patents' alleged date of invention. Instead, Planmeca asserted that Dr. Kia did not acquire such experience until nearly 10 years after the time of the invention.[1]

Planmeca moved for JMOL as to invalidity and noninfringement under Federal Rule of Civil Procedure Rule 50(a), which the court took under advisement before submitting the issues to the jury. The jury then rendered its verdict, finding that Planmeca directly infringed all asserted claims except claim 6 of the '374 patent. The jury also determined that none of the asserted claims were invalid for obviousness. After the verdict, the district court denied Planmeca's Rule 50(a) motions for JMOL as moot. Planmeca then renewed its motions for JMOL under Rule 50(b) as to, *inter alia*, noninfringement of claims 1 and 7 of the '301 patent, claim 1 of the '262 patent, and claim 1 of the '374 patent, and invalidity for obviousness as to claims 1 and 7 of the '301 patent, claim 1 of the '262 patent, and claims 1 and 6 of the '374 patent. The district court determined that Planmeca was not entitled to JMOL on any issue because substantial evidence supported the jury's verdict. With respect to Planmeca's argument that

---

[1] The parties dispute when Dr. Kia acquired the requisite 3 to 5 years of diagnostic imaging experience, and thus became qualified as a person of ordinary skill in the art. On appeal, Osseo maintains Dr. Kia acquired this requisite experience as of 1999 "through his work studying and building dental imaging systems." Appellee's Br. 17. Planmeca contends Dr. Kia did not acquire the requisite diagnostic imaging experience until 8 to 10 years after 1999. *See* Appellant's Br. 21. The district court did not resolve this factual dispute, and instead resolved whether Dr. Kia was qualified as a person of ordinary skill in the art regardless of timing as a matter of law.

Dr. Kia's testimony should be disregarded in its entirety because he was not a person of ordinary skill in the art at the time of the patents' alleged date of invention in 1999, the district court rejected it as legally incorrect. The district court explained that "[Planmeca] points to no legal support for the supposed requirement that an expert attain his or her expertise prior to a patent's effective date." *Osseo Imaging, LLC v. Planmeca USA Inc.*, No. 1:17-cv-01386, 2023 WL 1815975, at *3 (D. Del. Feb. 8, 2023). As such, the district court concluded that "[t]he jury was free to credit Dr. Kia's testimony in reaching its conclusions on infringement." *Id.*

Planmeca timely appealed the district court's decision. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Planmeca raises three issues on appeal. In particular, Planmeca argues that the district court erred in denying JMOL of noninfringement for two reasons: (1) although Dr. Kia became a person of ordinary skill 8 to 10 years after the time of the invention, he was not so skilled at the time of the invention, and thus the verdict cannot be supported by his testimony; and (2) even with Dr. Kia's testimony, the jury's verdict of infringement is not supported by substantial evidence. Planmeca also contends the district court's denial of JMOL of obviousness constitutes legal error because no evidence supports the jury's verdict. We address each issue in turn.

We review the denial of JMOL under the law of the regional circuit, here, the Third Circuit. *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1291 (Fed. Cir. 2023). "In the Third Circuit, review of denial of JMOL is plenary." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1202 (Fed. Cir. 2010). JMOL "is a sparingly invoked remedy, granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient

evidence from which a jury reasonably could find liability." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007), *as amended* (Aug. 28, 2007) (internal quotation marks and citations omitted). JMOL "is appropriate where 'the record is critically deficient of the minimum quantum of evidence' in support of the verdict." *TI Grp. Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.*, 375 F.3d 1126, 1133 (Fed. Cir. 2004) (quoting *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995)). "The question is not whether there is literally no evidence supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could have found its verdict." *Id.* (quoting *Gomez*, 71 F.3d at 1083). "In performing this narrow inquiry, we must refrain from weighing the evidence, determining the credibility of witnesses, or substituting our own version of the facts for that of the jury." *Marra*, 497 F.3d at 300.

I

At the outset, we note the unusual procedural posture of Planmeca's challenge regarding Dr. Kia's technical expert testimony. Planmeca did not file a *Daubert* motion seeking to exclude Dr. Kia's testimony because he was not a person of ordinary skill in the art. Nor did Planmeca appeal the denial of a motion to exclude Dr. Kia's testimony or a denial of an objection to that testimony at trial. Instead, consistent with its Rule 50 motions for JMOL filed during and after trial, Planmeca asserts that Dr. Kia's testimony cannot constitute substantial evidence to support the jury verdict of infringement. The district court held that Planmeca's argument found no support in precedent and rejected it as a matter of law. We review the district court's legal determination de novo. *See Finjan*, 626 F.3d at 1202 (quoting *McKenna v. City of Phila.*, 582 F.3d 447, 460 (3d Cir. 2009)).

"To offer expert testimony from the perspective of a skilled artisan in a patent case—like for claim

construction, validity, or infringement—a witness must at least have ordinary skill in the art." *Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1376–77 (Fed. Cir. 2022). All that is required "to be qualified to offer expert testimony on issues from the vantage point of an ordinarily skilled artisan in a patent case" is that "an expert must at a minimum possess ordinary skill in the art." *Id.* at 1377. Our precedent is clear—nothing more is required.

Planmeca urges us to add a timing requirement to the minimum qualifications necessary to offer expert testimony from the perspective of a person of ordinary skill. Planmeca contends that a technical expert opining on infringement must possess the requisite ordinary skill in the art "*at the time of the alleged invention.*" Appellant's Br. 16 (emphasis added). Planmeca relies on language in *Kyocera* and our court's precedent on claim construction for support. Neither persuades us here.

First, Planmeca asserts that while "*Kyocera* does not specifically state that an expert must be a [person of ordinary skill] at the time of the invention, *Kyocera* does hold that an expert witness must 'be qualified to offer expert testimony on issues *from the vantage point* of an ordinarily skilled artisan in a patent case.'" Appellant's Br. 17 (quoting *Kyocera*, 22 F.4th at 1377 (emphasis added)). Planmeca infers too much from this language in *Kyocera*. To start, there is no direct support for Planmeca's proposed timing requirement in *Kyocera*. Indeed, the court in *Kyocera* did not even consider the requirement Planmeca asks this court to impose. The issue presented in *Kyocera* was simply whether an expert who did not qualify as a person of ordinary skill in the art—*at any time*—could present reliable testimony as a technical expert. The court in *Kyocera* said no. As stated above, all that *Kyocera* requires "[t]o offer expert testimony from the perspective of a skilled artisan in a patent case" is that "a witness must at least have ordinary skill in the art." *Kyocera*, 22 F.4th at 1376–77. *Kyocera* does not state that an expert must be a person of

ordinary skill in the art *at the time of the invention* to offer expert testimony from the vantage point of a skilled artisan.

Nor do we think that we should impose such a requirement. It is undisputed that Dr. Kia's qualifications meet that of a person of ordinary skill in the art in this case. *See* J.A. 5472;   J.A. 4116–24   at 309:19–317:25;   J.A. 4128 at 321:7–12. While Planmeca correctly notes that claim interpretation (step one of the infringement analysis) requires knowledge of a person of ordinary skill "at the time of the invention," Appellant's Br. 17 (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc)), we are reluctant to conclude that an expert's subsequent acquisition of the requisite level of skill per se renders an expert's infringement testimony unreliable such that it should be excluded. Even assuming Planmeca is correct in asserting that that Dr. Kia did not have the requisite 3 to 5 years of diagnostic imaging experience until 8 to 10 years after the time of the invention, we are not convinced that Dr. Kia's infringement analysis was unreliable such that it cannot form a basis for supporting the jury verdict.

Indeed, it makes little sense to add Planmeca's suggested timing requirement. An expert need not have acquired that skill level prior to the time of the invention to be able to testify *from the vantage point* of a person of ordinary skill in the art. Rather, an expert can acquire the necessary skill level later and develop an understanding of what a person of ordinary skill knew at the time of the invention. In practice, the fact that the expert was not a person of ordinary skill at the time of the invention may well be used during cross examination to undermine the credibility of the expert. Relatedly, an expert who later acquires the requisite knowledge could avoid such potential damage to her credibility by explaining to the judge and jury how she gained the perspective of a person of ordinary skill *at the time of the invention*. In fact, Dr. Kia did something

similar here.    Contrary to Planmeca's assertion that "Dr. Kia offered no trial evidence or testimony that his opinions reflected the views of a [person of ordinary skill in the art] in 1999," Appellant's Br. 21, Dr. Kia testified about what was known in the field at the relevant time. *See, e.g.*, J.A. 4254–57  at 447:22–450:25;  J.A. 4140–41  at 333:4–334:15.

Accordingly, we see no reversible error. We agree with the district court that the proposed timing requirement is not a basis for excluding Dr. Kia's expert testimony as a matter of law.

## II

"A determination of infringement, both literal and under the doctrine of equivalents, is a question of fact, reviewed for substantial evidence when tried to a jury." *TI Grp.*, 375 F.3d at 1133. "A factual finding is supported by substantial evidence if a reasonable jury could have found in favor of the prevailing party in light of the evidence presented at trial." *Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327, 1335 (Fed. Cir. 2019) (citing *Tec Air, Inc. v. Denso Mfg. Mich. Inc.*, 192 F.3d 1353, 1357–58 (Fed. Cir. 1999)).

Planmeca contends that, even with Dr. Kia's testimony, no reasonable jury could have found infringement of claims 1 and 7 of the '301 patent, claim 1 of the '262 patent, or claim 1 of the '374 patent because Planmeca's Accused Systems did not practice the *densitometry*, *tomographic modeling*, or *comparing* limitations in the asserted claims. We address each limitation in succession.

### Densitometry

The district court construed *densitometry* as "quantitatively calculated bone density." J.A. 1207–08. Planmeca argues that, under the district court's construction, no reasonable jury could have found infringement of the densitometry limitation because "Osseo provided no evidence at trial that the Accused Systems quantitatively calculated

bone density (e.g., by calculating mass divided by volume) as required by all asserted claims." Appellant's Br. 26 (emphasis omitted). Instead, Planmeca is of the view that "Osseo did nothing more than show that [Hounsfield Unit (HU)] values used by the Accused Systems may indicate relative density, which is not the same as performing or showing 'quantitatively calculated bone density.'" Appellant's Br. 27. To Planmeca, the presentation of HU values did not satisfy the *densitometry* limitation because "the Accused Systems used HU values for gray-scale representations that a person could use to merely *qualitatively* (or relatively) assess bone density based on the HU values." Appellant's Br. 31 (emphasis in original). Osseo responds that the evidence at trial showed that Planmeca's Accused Systems calculated HU values which, in fact, represent bone density, thus satisfying the *densitometry* limitation. Appellee's Br. 30–31.

Substantial evidence supports the jury's infringement verdict. To start, the Accused Systems' user manual states that HU values are calculated by the Accused Systems in operation. J.A. 5352. And Osseo's expert, Dr. Kia, explained that HU values correspond to bone densities. J.A. 4175–76 at 368:3–369:2 (discussing J.A. 5376). Thus, taken together, the jury heard evidence on which it could reasonably rely to find that Planmeca's Accused Systems met the *densitometry* limitation.

### Tomographic Model

The district court construed *tomographic model* as "merging information from multiple tomographic scans." *See* J.A. 1204–07. Planmeca argues that the evidence at trial showed that the tomographic model generated by the "Accused Systems was created using individual, non-tomographic images from a single scan of the patient." Appellant's Br. 37 (emphasis omitted). Planmeca stresses that Dr. Kia's testimony showed that the tomographic model was not created by merging multiple tomographic scans,

but rather by using multiple single 2D images obtained from a single scan of the patient's head. Osseo responds that Planmeca misconstrues the district court's construction of *tomographic model*, "contort[s] Dr. Kia's testimony," and ignores Dr. Kia's further testimony that confirms each of the 2D images were in fact 2D projections that each constitute tomographic scans. Appellee's Br. 37–38. We agree with Osseo—substantial evidence supports the jury's infringement verdict.

The Court's construction does not require that information be merged from tomographic images, but rather that information be merged from multiple tomographic scans. To that end, although Dr. Kia testified that the 2D projections themselves were not tomographic images, he did confirm that each of those 2D projections were tomographic scans. J.A. 4361 at 518:15–25. Dr. Kia also clarified that the Accused Systems merged information from multiple tomographic scans. J.A. 4362 at 519:7–23. Thus, the jury heard evidence on which it could reasonably rely to find that the Accused Systems satisfied the *tomographic model* limitation.

### Comparing

The district court determined that no construction was necessary for the *comparing* term in the larger phrase "said computer creating, storing and comparing three-dimensional digital densitometry models without the use of fiducial markers of patient dental or orthopedic structure." *See* J.A. 1213. Still, Planmeca continues to assert on appeal that claim 1 of the '262 patent requires a computer of the Accused Systems to do a comparison of the densitometry models and that Osseo put on no evidence that a computer performed the comparison of the densitometry models. *See* Appellant's Br. 41–42. Instead, Planmeca asserts, there was only evidence of a human performing the comparison after the computer presented at least two images (i.e., two densitometry models). *See* Appellant's Br. 42–43. Osseo

responds that it was not required to present evidence that a computer of the Accused System, and not the users themselves, compared the created and stored dental models. Appellee's Br. 41. Rather, Osseo asserts that it "presented ample evidence to the jury that the Romexis software of the Accused Systems facilitates the comparison of two images by registering and displaying them such that the corresponding parts of the patient's anatomy are aligned." Appellee's Br. 42.

Substantial evidence supports the jury's verdict of infringement. First, we do not read this claim to require the absence of human involvement in the comparison step. That is, the *comparing* limitation may be satisfied if a computer of the Accused Systems displays two densitometry models in a manner that invites the comparison of the two densitometry models. For instance, the presentation of a side-by-side arrangement or the presentation of two images layered one on top of the other would suffice because any differences between the two densitometry models would be discernable. Dr. Kia explained that the Accused Systems perform this type of presentation to the jury. J.A. 4200–04 at 393:12–397:17; J.A. 4217–18 at 410:13–411:21. As such, the jury reasonably found that Planmeca's Accused Systems met the *comparing* limitation.

We conclude that substantial evidence supports the jury's verdict of infringement of claims 1 and 7 of the '301 patent, claim 1 of the '262 patent, and claim 1 of the '374 patent. Accordingly, we affirm the district court's denial of JMOL.

## III

As to obviousness, "[t]his court reviews a jury's conclusions on obviousness, a question of law, without deference, and the underlying findings of fact, whether explicit or implicit within the verdict, for substantial evidence." *LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d

1347, 1353 (Fed. Cir. 2001); *see also TI Grp.*, 375 F.3d at 1133. "Where, as here, the jury made no explicit factual findings regarding obviousness, we must determine whether the implicit findings necessary to support the verdict are supported by substantial evidence." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1294 (Fed. Cir. 2009); *see* J.A. 3574. "[W]hether there is a reason to combine prior art references is a question of fact" that we review for substantial evidence. *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1367 (Fed. Cir. 2012).

Planmeca argues that the evidence at trial demonstrated that each limitation of the asserted claims was shown in the prior art and that its expert, Dr. Norbert Pelc, "diligently presented a combination of prior art references[, Guenther, Mazess, Fontevraud, and DIMAXIS,] that demonstrated by clear and convincing evidence the obviousness of the patent claims at trial." Appellant's Br. 51–52. In addition, Planmeca asserts that Osseo's expert, "Dr. Kia[,] did not at all challenge the disclosure in Guenther, Mazess, Fontevraud, and DIMAXIS that Dr. Pelc relied on to reach his obviousness opinion."[2] Appellant's Br. 54. Thus, Planmeca concludes that no reasonable jury could have found the asserted claims of the Asserted Patents nonobvious. Osseo responds that it presented evidence—Dr. Kia's testimony—that it would not have been obvious to combine the teachings of the primary prior art references Guenther, Mazess, and Fontevraud. Planmeca

---

[2]    Oddly, Planmeca does not appear to argue that the district court should have given no weight to Dr. Kia's testimony regarding obviousness. In any event, as noted above, we reject Planmeca's argument the Dr. Kia's testimony cannot constitute substantial evidence because he was not a person of ordinary skill in the art until after the time of the invention.

essentially asks us to reweigh the evidence presented to the jury, which we will not do.

Substantial evidence supports the jury's findings necessary to support the verdict that the Asserted Patents are not invalid as obvious. First, Dr. Kia disputed Dr. Pelc's conclusions regarding obviousness. J.A. 5056 at 1127:3–22. Dr. Kia then testified on the differences between tomosynthesis and computed tomography. J.A. 5057–60 at 1128:10–1131:13. This discussion served as a backdrop against which Dr. Kia explained that densitometry, or bone density data, and tomosynthesis are incompatible with each other because tomosynthesis scans can produce blurry anatomical images. J.A. 5060–63 at 1131:14–1134:6. Based on this entire discussion, Dr. Kia concluded it would not have been obvious to a person of ordinary skill in the art to combine the tomosynthesis concept in Guenther with the densitometry concepts in Mazess and Fontevraud. *See* J.A. 5056 at 1127:3–22 (noting "one of ordinary skill in the art would not look to bone general density for a solution for a problem related to tomosynthesis"); J.A. 5068 at 1139:9–18; J.A. 5064–69 at 1135:13–1140:13. Thus, the jury heard evidence demonstrating that it would not have been obvious to a skilled artisan to combine the prior art references. The jury could reasonably rely on such evidence to find that Planmeca did not meet its burden to establish by clear and convincing evidence that the asserted claims of the Asserted Patents are invalid for obviousness. Accordingly, we affirm the district court's denial of JMOL.

## CONCLUSION

We have considered Planmeca's remaining arguments and find them unpersuasive. For the reasons above, we affirm the district court's denial of judgment as a matter of law with respect to infringement and invalidity.

## AFFIRMED