# United States Court of Appeals for the Federal Circuit

---

**WONDERLAND SWITZERLAND AG,**
*Plaintiff-Cross-Appellant*

**v.**

**EVENFLO COMPANY, INC.,**
*Defendant-Appellant*

---

2023-2043, 2023-2233, 2023-2326

---

Appeals from the United States District Court for the District of Delaware in No. 1:20-cv-00727-JPM, Judge Jon P. McCalla.

---

Decided: December 17, 2025

---

SHAMITA ETIENNE-CUMMINGS, Paul Hastings LLP, Washington, DC, argued for plaintiff-cross-appellant. Also represented by ALAN BILLHARZ, JAMES P. GAGEN, DAVID M. TENNANT.

AARON E. HANKEL, Shook, Hardy & Bacon, LLP, Kansas City, MO, argued for defendant-appellant. Also represented by LAUREN ELIZABETH DOUVILLE.

---

Before MOORE, *Chief Judge*, PROST and REYNA, *Circuit Judges*.

2    WONDERLAND SWITZERLAND AG v. EVENFLO COMPANY, INC.

Opinion for the court filed by *Chief Judge* MOORE.

Opinion concurring-in-part and dissenting-in-part filed by *Circuit Judge* REYNA.

MOORE, *Chief Judge*.

Evenflo Company, Inc. (Evenflo) appeals (1) a final judgment from the United States District Court for the District of Delaware holding Evenflo infringed claim 1 of U.S. Patent No. 7,625,043 and claims 1 and 5 of U.S. Patent No. 8,141,951; and (2) a permanent injunction ordered by the district court. Wonderland Switzerland AG (Wonderland) cross-appeals the district court's denial of a new trial on willful infringement. For the following reasons, we affirm-in-part, reverse-in-part, vacate-in-part, and remand for further proceedings.

BACKGROUND

Wonderland owns the '043 and '951 patents, which are directed to car seats for children. '043 patent at 1:15–20; '951 patent at 1:13–15. Claim 1 of each patent is representative. Claim 1 of the '043 patent reads:

1. A car seat for use in an automobile to transport a child, comprising:

a seat assembly defining a generally horizontal seat surface for supporting a child positioned thereon, said seat assembly including a *pair of receptables*; and

*a seat back having a locking mechanism for selectively detachably connecting said seat back to said seat assembly*, said seat back including a rear support portion oriented in generally upright position when attached to said seat assembly, said seat back having a pair of *attachment arms projecting generally, perpendicularly outwardly relative to said rear support portion for engagement* with said

seat assembly so as to be received within corresponding said receptacles.

'043 patent at 10:47–60 (emphases added).

Claim 1 of the '951 patent reads:

1. A child safety seat comprising: a seat body;

an engaging board *connected to* the seat body, a tooth-shaped structure being formed on the engaging board;

a *backrest movably disposed on the engaging board*; and

an engaging mechanism disposed between the engaging board and the backrest, the engaging mechanism comprising:

an engaging member pivotally *connected to* the backrest for engaging with the tooth-shaped structure; and

a driving device movably *connected to* the backrest, the driving device comprising:

a connecting member pivotally *connected to* a first end of the engaging member; and

a *pulling member connected to the connecting member*, for driving the first end of the engaging member to rotate relative to the backrest when the driving device moves to a releasing position . . . .

'951 patent at 6:46–7:8 (emphases added).

Wonderland sued Evenflo, alleging five of Evenflo's convertible car seat models—divided into the "4-in-1 seats"

and the "3-in-1 seats" (collectively, accused products[1])—infringe various claims of the '043 and '951 patents. J.A. 183–279; J.A. 1–3. At trial, the jury rendered a verdict finding (1) Evenflo's 3-in-1 and 4-in-1 seats infringe claim 1 of the '043 patent under the doctrine of equivalents (DOE), (2) Evenflo's infringement of the '043 patent was not willful, (3) the 4-in-1 seats infringe claims 1 and 5 of the '951 patent (literally and under DOE), and (4) the 3-in-1 seats infringe claim 1 of the '951 patent (literally and under DOE). J.A. 107–12. After trial, the district court granted Wonderland's motion for permanent injunctive relief and denied the parties' cross-motions for judgment as a matter of law (JMOL) and for a new trial. J.A. 1–19; J.A. 44–65. Although Wonderland moved for permanent injunction with respect to the '043 patent only, the district court permanently enjoined activities relating to both asserted patents. J.A. 19. We ordered a stay pending appeal of the injunction only as it relates to the '951 patent. Stay Order, Dkt. No. 21. Evenflo appeals the district court's final judgment and permanent injunction order. Wonderland cross-appeals the court's denial of a new trial on willful infringement. We have jurisdiction under 28 U.S.C. §§ 1292 (c)(1)–(2) and 1295(a)(1).

DISCUSSION

I.   Evenflo's Appeal

Evenflo raises several issues on appeal. Regarding the '043 patent, Evenflo argues (1) no reasonable jury could find the seat back of Evenflo's 4-in-1 seats have a "locking mechanism for selectively detachably connecting" the seat back to the seat assembly, (2) the district court erred by failing to resolve a claim construction dispute over the "pair

---

[1]   The 4-in-1 seats include Evenflo's EveryFit and EveryKid models. The 3-in-1 seats include Evenflo's Safe-Max, Evolve, and Transitions models. J.A. 1–3.

of receptacles," and (3) the district court erred by failing to construe "attachment arms . . . for engagement." '043 patent at 10:47–60. As for the '951 patent, Evenflo argues (1) the district court incorrectly construed "connected to" and (2) no reasonable jury could find the accused products have "a backrest movably disposed on the engaging board." '951 patent at 6:46–7:8. Finally, Evenflo argues the district court abused its discretion in granting injunctive relief with respect to both the '043 and '951 patents. We address each issue in turn.

## A. '043 Patent: "a seat back having a locking mechanism for selectively detachably connecting said seat back to said seat assembly"

Evenflo argues the seat backs of its accused 4-in-1 seats do not include a "locking mechanism for selectively detachably connecting" the seat back to the seat assembly as recited in claim 1 of the '043 patent, and no reasonable jury could have found otherwise. We agree.

We review a jury's infringement findings, both literal and under the doctrine of equivalents, for substantial evidence. *Osseo Imaging, LLC v. Planmeca USA Inc.*, 116 F.4th 1335, 1341–42 (Fed. Cir. 2024). "A factual finding is supported by substantial evidence if a reasonable jury could have found in favor of the prevailing party in light of the evidence presented at trial." *Id.* (quoting *Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327, 1335 (Fed. Cir. 2019)).

The jury found Evenflo's 4-in-1 seats infringed claim 1 of the '043 patent under DOE. J.A. 108. Claim 1, however, requires "a seat back having a locking mechanism for selectively detachably connecting said seat back to [a] seat assembly." '043 patent at 10:52–54. There is no substantial evidence the 4-in-1 seats include any such feature. The seat backs of the 4-in-1 seats simply include a stationary metal bar (referred to as a "lock rod") while all the components for selectively attaching and detaching to the lock rod—including a handle and spring-loaded hooks—are

located on the seat assembly.  Evenflo Br. 12–13, 45; Wonderland Br. 44.  Because claim 1 plainly requires the *seat back* to include the components for selective detachability, no reasonable jury could find the accused 4-in-1 seats literally meet this limitation.

Wonderland argues there is still substantial evidence to find infringement under DOE because its expert, Dr. Cameron, explained to the jury there were "no substantial differences" in having the spring-loaded hooks on the seat back or seat assembly because it is still the "overall same mechanism."  Wonderland Br. 44 (citing J.A. 6583–85).  The locking mechanism limitation requires the selective detachability components to be on the seat back rather than the seat assembly.  It is thus insufficient, under DOE, to argue the "overall . . . mechanism" is the same or that a different claim element (i.e., the seat assembly) contains the locking mechanism for selectively detachably connecting.  "[DOE] must be applied to *individual elements* of the claim, not to the invention as a whole."  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) (emphasis added).  We conclude there can be no equivalence as a matter of law with Evenflo's 4-in-1 seats, which do not include any elements on the seat back for selectively detachably connecting the seat back to the seat assembly.  Accordingly, substantial evidence does not support the jury's finding that the 4-in-1 seats infringe claim 1 of the '043 patent under DOE.

## B. '043 Patent: "pair of receptacles"

Evenflo further argues the district court erred by failing to resolve a claim construction dispute over the "pair of receptacles" recited in claim 1 of the '043 patent.  We do not agree.

We review a district court's claim construction based on intrinsic evidence de novo and review any findings of fact regarding extrinsic evidence for clear error.  *Speed-Track, Inc. v. Amazon.com*, 998 F.3d 1373, 1378 (Fed. Cir.

2021). "When the parties raise an actual dispute regarding the proper scope of [the] claims, the court, not the jury, must resolve that dispute." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

During claim construction, Evenflo proposed construing the term "receptacle" as "a bounded space to receive and contain," while Wonderland proposed "a space defined by one or more surfaces sized to receive attachment arms." J.A. 311. The district court considered both proposals and, with the parties' agreement, construed receptacle as "a three[-]dimensional space sized to receive an attachment arm." J.A. 311 (parties' proposed constructions); J.A. 490 (claim construction order); J.A. 496–510 (Markman hearing). At summary judgment, the parties then disputed what it means for a space to be "sized" to receive an arm, but the district court determined Evenflo was judicially estopped from arguing each receptacle must be defined by a bounded space because Evenflo abandoned this argument when it accepted the court's construction. J.A. 3862–64.

On appeal, Evenflo argues judicial estoppel does not apply because its proposed construction of receptacle was consistent with the court's construction, and all parties agreed a receptacle is a bounded space. Evenflo Br. 29–30 (citing J.A. 509 at 19:18–21; J.A. 500 at 10:11–18; J.A. 510 at 20:18–19). According to Evenflo, if the jury were properly instructed that a receptacle is a bounded space, they could not have found the accused products infringe because the accused products' single continuous cavity is not the same as a "pair of receptacles" each "sized" to receive an attachment arm. Evenflo Br. 30–33.

We see no error by the district court. The court resolved the claim construction dispute by adopting a construction that did not include Evenflo's proposed "bounded" language, and the parties stipulated to this construction. J.A. 311; J.A. 490; J.A. 496–510. Wonderland never conceded a receptacle is necessarily a bounded space, as

Evenflo claims. Wonderland simply acknowledged during the *Markman* hearing that one embodiment of the '043 patent showed a "bounded space" and that a space within a seat assembly needs to be "three-dimensional." J.A. 500 at 10:11–18; J.A. 509 at 19:18–21; *see also* Wonderland Br. 21. The district court did not err by adopting a claim construction agreed upon by the parties and leaving the factual question of infringement to the jury.

Having identified no error in the district court's claim construction, we also hold the jury's infringement finding was supported by substantial evidence. For example, there was ample evidence from Dr. Cameron and Evenflo's engineers that there is not just one featureless cavity in the accused products, but lips and walls that define the pair of receptacles. *See* J.A. 5750–51; J.A. 5864–69; J.A. 5880–82; J.A. 6076–81; J.A. 6119–24*;* J.A. 6262–68*;* J.A. 6492–93; J.A. 6579–81; J.A. 7357–59; J.A. 7527–28; J.A. 7545. Accordingly, we see no reason to disturb the jury's finding that the accused products include a pair of receptacles.

C. '043 Patent: "attachment arms . . . for engagement"

Evenflo next argues the district court erred by failing to construe "attachment arms . . . for engagement" as recited in claim 1 of the '043 patent. We do not agree.

Although "[a] determination that a claim term . . . has the 'plain and ordinary meaning' may be inadequate . . . when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute," *O2 Micro*, 521 F.3d at 1361, that is not the case here. The district court's adoption of a plain and ordinary meaning construction of engagement fully resolved the parties' dispute. J.A. 533; J.A. 3866.

During claim construction, Evenflo argued engagement meant "to interlock with or fit into and move together with." J.A. 310. The district court, however, adopted the plain and ordinary meaning of engagement, noting Evenflo's proposed construction was too narrow. J.A. 533. At

summary judgment, the district court again considered Evenflo's proposal that "attachment arms . . . for engagement" means "attachment arms . . . for interlocking with or otherwise attaching to," and rejected this as "overly limiting and inconsistent with [engagement's] usage in the '043 patent." J.A. 3864–68. It is clear from this record the district court considered and resolved the dispute over whether claim 1's attachment arms must interlock with or attach to the seat assembly.

We see no error in the district court's conclusion that the plain and ordinary meaning of engagement is broader than Evenflo's proposed construction. The '043 patent's distinct use of terms such as "locking" in the written description suggests engagement means something different. '043 patent at 9:46–53. Moreover, dependent claim 5 recites a "locking mechanism" and "latching apparatus" to "secure" the attachment arm to the seat assembly. *Id.* at 11:11–13. Because claim 1 already requires "attachment arms . . . for engagement with [the] seat assembly," the further use of locking and latching components to secure the attachment arm to the seat assembly demonstrates engagement is broader than "interlocking with or otherwise attaching to." *Id.* at 10:56–59, 11:11–13.

Substantial evidence supports the jury's infringement finding under the correct construction of engagement. For example, Dr. Cameron's testimony about how the accused products' attachment arms (1) literally infringe by providing structural integrity for engagement and (2) infringe under DOE was substantial evidence supporting the jury's verdict. J.A. 6104–12; J.A. 6154–58; J.A. 6585–87. Accordingly, we see no reason to disturb the jury's finding that the accused products include "attachment arms . . . for engagement."

### D. '951 Patent: "connected to"

Turning to the '951 patent, Evenflo argues the district court incorrectly construed "connected to" in claim 1 as

referring "not only to separate pieces that are later connected, but also to different parts or features that are discrete yet formed out of a continuous base material." Evenflo Br. 49 (quoting J.A. 88). Evenflo argues that if "connected to" were properly construed to require the pulling member and connecting member of claim 1 to be physically distinct components, no reasonable jury could have found the accused products infringe because both alleged elements are made of a single piece of plastic in the accused products. *Id.* at 54–55. We do not agree.

Evenflo incorrectly asserts that controlling precedent confirms components "connected to" one another are presumed to be physically distinct. *Id.* at 48–55. For example, Evenflo cites cases such as *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249 (Fed. Cir. 2010) to argue "there is a presumption that two distinct and separate structures are required for a finding of infringement" when the claims specify two components are "connected to" each other. Evenflo Br. 52 (citing *Becton*, 616 F.3d at 1254–56); *see also id.* at 51 (citing *Gaus v. Conair Corp.*, 363 F.3d 1284, 1288 (Fed. Circ. 2004); *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1404–05 (Fed. Cir. 1996)). These cases, however, describe no such presumption. *Becton* did not address whether two structural elements can be considered connected to each other when they are distinct yet formed on the same underlying structure. 616 F.3d at 1254–56. *Becton* simply concluded two distinct claim elements connected to each other could not both refer to the *entirety* of a single structure because this would make them "one and the same." *Id.*; *see also Engel Indus.*, 96 F.3d at 1404–05 (concluding a "second portion" and "return portion" cannot be "one and the same" when the patent describes them as separate elements). Evenflo's view is further contradicted by *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296 (Fed. Cir. 2011), where we expressly declined "to exclude from the scope of the claims [two components] that form distinct portions of a single

structure" where the two components "serve different purposes" and "cover distinct structural portions of an integral structure." 653 F.3d at 1304. We thus reject the notion that our precedent establishes a presumption or per se rule that controls the construction of "connected to."

We focus our analysis on the intrinsic evidence, which is "[t]ypically . . . the most important consideration in a claim construction analysis," and conclude it supports the district court's construction. *Medytox, Inc. v. Galderma S.A.*, 71 F.4th 990, 997 (Fed. Cir. 2023). Although the specification describes embodiments in which the pulling and connecting members are distinct components, the claim language does not recite a specific process or way of connecting them. *See* '951 patent at 3:18–20, 4:46–49, Fig. 2, 6:46–7:8 (claim 1). Moreover, the specification uses "connected to" broadly to encompass the connection of distinct portions of a backrest that are integrally formed. *Id.* at 2:46–48 ("headrest portion 15 is connected to a body portion 17 closely and formed integrally and movable synchronously with the body portion 17"). Because "claim terms are normally used consistently throughout the patent," we find this to be strong evidence that "connected to" in claim 1 encompasses connections between two distinct portions (i.e., a pulling member and a connecting member) of a single integrally formed plastic component. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). We also see no contradiction with the prosecution history, which is devoid of any indication that the addition to claim 1 of the "pulling member connected to the connecting member" language was intended to require physically separate and distinct components. J.A. 1002–03; J.A. 1005–08.

Under the district court's correct construction, there was substantial evidence in the form of Dr. Cameron's testimony to find infringement. *See, e.g.*, J.A. 6190–97; J.A. 6215–20; J.A. 6576–79. We see no error in the court's construction of "connected to" and hold substantial evidence supports the jury's finding that the accused products

12   WONDERLAND SWITZERLAND AG v. EVENFLO COMPANY, INC.

meet the "pulling member connected to the connecting member" limitation of claim 1.

### E. '951 Patent: "backrest"

Evenflo next argues we should reverse the jury's infringement findings for the '951 patent (both literal and under DOE) because a reasonable jury could not have found the accused products have "a backrest movably disposed on the engaging board" as recited in claim 1. We do not agree.

According to Evenflo, its car seats only include a movable *headrest*, not a movable *backrest*. *Id.* at 56 (citing J.A. 7457–58; J.A. 7459–60; J.A. 7634–35; J.A. 7636–38). Further, Evenflo argues the trial evidence showed the headrests in the 3-in-1 seats never support a child's back, and the headrests in the 4-in-1 seats include, at best, a small plastic flap on the lower portion of the headrest that would sit at a child's shoulders with proper installation. *Id.* at 56–57 (citing J.A. 7490–7524; J.A. 7634–35; J.A. 7636–38; J.A. 7639–40; J.A. 5932 at 842:16–24; J.A. 5934–35 at 844:20–845:1; J.A. 5846–47 at 756:18–757:24). Evenflo's argument fails, however, because substantial evidence supports the jury's finding that the claimed "backrest" is met by the headrests of the accused products. For example, the '951 patent describes a backrest as a structure that "a child can lie on or lean against" and discloses an embodiment including a "headrest portion." '951 patent at 2:45–51, Fig. 1. Thus, a jury could reasonably find the term "backrest," as used in claim 1, was met by the headrests of Evenflo's accused products because a child could lean back against them. The jury heard testimony from Dr. Cameron on this point. J.A. 6176–77 ("[W]hat Evenflo calls the headrest . . . that's the backrest."); *see also* J.A. 6204–05. And as Dr. Cameron explained to the jury, it is the '951 patent's use of the term "backrest" that controls, not Evenflo's preferred terminology for its own products. J.A. A6172–74; *see also Phillips*, 415 F.3d at 1315 ("The words of patent claims have the

meaning and scope with which they are used in the specification and the prosecution history.") (quoting *Kinik Co. v. Int'l Trade Comm'n*, 362 F.3d 1359, 1365 (Fed. Cir. 2004)). This is substantial evidence upon which a reasonable jury could find infringement and supports the jury's finding that the accused products meet the "backrest" limitation of claim 1.

## F. Injunctive Relief

Evenflo argues the district court abused its discretion in permanently enjoining activities relating to both the '951 and '043 patents. We agree on both counts.

### 1. '951 patent

Regarding the '951 patent, we conclude the district court abused its discretion in granting a permanent injunction because Wonderland expressly declined to request such relief. J.A. 7138 (Wonderland's attorney stating "[w]e're not seeking injunction with respect to Evenflo's infringement of the '951 patent."). Injunction is "a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). Thus, it is an abuse of discretion to grant such an extraordinary remedy when a party did not request it. Wonderland argues the grant of a permanent injunction as to the '951 patent is at most harmless error because it has the same "practical effects" as the injunction for the '043 patent. Wonderland Br. 60. We do not agree for two distinct reasons: (1) the injunction could affect Evenflo's release of other products, which may not necessarily infringe the '043 patent, and (2) we conclude the district court also abused its discretion in granting injunctive relief with respect to the '043 patent, as explained below. We temporarily stayed the injunction as to the '951 patent pending appeal, and having now considered the parties' arguments, we reverse the district court's grant of a permanent injunction.

14    WONDERLAND SWITZERLAND AG v. EVENFLO COMPANY, INC.

### 2. '043 patent

Regarding the '043 patent, we conclude the district court abused its discretion in granting a permanent injunction because it relied solely on speculative and conclusory evidence that Wonderland suffered, and would continue to suffer, irreparable harm or injury that could not be compensated with monetary damages. To justify the extraordinary remedy of injunctive relief, a plaintiff "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1359 (Fed. Cir. 2013) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). With respect to irreparable harm, it is insufficient for the plaintiff to raise "[t]he mere possibility or speculation of harm." *Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*, 39 F.4th 1377, 1380 (Fed. Cir. 2022). Instead, the "party seeking a preliminary injunction must establish that it is *likely* to suffer irreparable harm without an injunction." *Id.* (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

Here, the district court did not point to any non-speculative or non-conclusory evidence establishing Wonderland's business partner, Graco Children's Products Inc. (Graco),[2] lost sales or market share of car seat products to Evenflo as opposed to the large number of other competitors in the market. J.A. 8–10 (citing J.A. 5885–91, J.A. 5727–28, J.A. 5996); *see also* J.A. 7910–24 (showing market data for several competitor brands). Meanwhile,

---

[2]    Wonderland is Graco's exclusive supplier of car seats. J.A. 9.

for non-car seat products, the district court improperly relied on speculative and conclusory testimony from Wonderland's managing director, Renee Wang, that a lost car seat sale "naturally leads" to the loss of market share across other products. J.A. 9 (citing J.A. 5673–75); *see also* J.A. 12. This testimony was concededly based on "no[thing] more than [the notion that] the parents will buy other products under the same brand name." J.A. 5674 at 584:20–21. Without providing any evidence of such consumer behavior, Ms. Wang merely speculated that after buying a car seat, a parent "may" also choose to buy other products under the same brand. J.A. 5675 at 585:4–12. Such speculative testimony is not sufficient to establish irreparable harm. *Koninklijke Philips*, 39 F.4th at 1380.

With respect to reputational loss, the district court cited no record evidence to support its findings that "[t]he similarity between Graco's products and Evenflo's Accused Products has caused Graco's products to lose some of their 'distinctiveness and market allure' and has also harmed Graco's reputation as an innovator in the marketplace." J.A. 10. Nor did the district court cite any evidence to support its finding that such reputational factors "cause Wonderland irreparable harm because of Graco and Wonderland's close working relationship and exclusive supplier arrangement." *Id.*; *see also* J.A. 13. Similarly, the district court failed to identify *any* evidence from the trial record supporting its assertions that "an average customer . . . [would] assume that Graco's products do not contain unique or innovative technologies," that such reputational harm would flow to Wonderland, or that Wonderland would suffer reputational harm because it "may be seen as failing to enforce its intellectual property rights." J.A. 13.

Wonderland argues the trial record supports the district court's grant of a permanent injunction by citing to Wonderland's motion for injunctive relief, in which it argued "Evenflo's infringement has resulted in product

16    WONDERLAND SWITZERLAND AG v. EVENFLO COMPANY, INC.

confusion among consumers, and . . . has raised concerns about quality control of the infringing technology." Evenflo Br. 62 (citing J.A. 4974). The underlying cited testimony of Ms. Wang, however, simply states that "[*i*]*f* Evenflo's car seat with [a] similar function has a problem . . . then [the] consumer *might* think that's a technology problem." J.A. 4974. This kind of speculative testimony is not sufficient to establish irreparable reputational harm to Graco and certainly fails to show how such reputational harm flows to Wonderland. Accordingly, based on the record before us and the reasoning provided by the district court, we reverse the district court's grant of a permanent injunction as to the '043 patent.

## II.  Wonderland's Cross-Appeal

In its cross-appeal, Wonderland argues the district court abused its discretion by denying Wonderland a new trial on willful infringement as to the '043 patent after erroneously excluding trial evidence of Evenflo's subjective intent to infringe. Wonderland Br. 66–75. Specifically, Wonderland challenges the court's exclusion, under Federal Rule of Evidence 403, of an email chain in which an employee of Evenflo's affiliated corporation, Goodbaby Child Products Co., Ltd. (Goodbaby),[3] notified Evenflo employees that one of the accused products might fall within the scope of claim 1 of the '043 patent and asked how to "avoid the claims of the patent." *Id.*; *see also* J.A. 3785–3805[4]; J.A. 4006–08. We agree the district court abused its

---

[3]    Goodbaby and Evenflo share the same parent corporation. Evenflo Resp. & Reply Br. at 40; Wonderland Reply Br. at 6.

[4]    Although the full email chain at J.A. 3785–3805 is marked as confidential, the parties agreed at oral argument to publicly discuss the email chain to the extent it refers to commercially available, existing products such as the Evenflo Evolve. Oral Arg. at 5:05–5:32.

discretion by excluding certain portions of the email chain and reverse the district court's denial of a new trial on willful infringement.

We review the denial of a motion for a new trial under the law of the regional circuit, here the Third Circuit. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1202 (Fed. Cir. 2010). The Third Circuit reviews denial of a motion for a new trial for an "abuse of discretion, except where a district court bases its denial of the motion on an application of law, in which case an appellate court's review is plenary." *Id.* The district court abuses its discretion when its "decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 191 (3d Cir. 2019) (internal quotation and citation omitted).[5] A court may grant a new trial for the erroneous exclusion of evidence that affected "a substantial right" of a party. *Glass v. Philadelphia Elec. Co.*, 34 F.3d 188, 191 (3d Cir. 1994). Erroneous exclusion of evidence is harmless only "if it is highly probable that the error did not affect the outcome of the case." *Id.*

Here, the district court excluded the email chain under Federal Rule of Evidence 403 because it determined the probative value was substantially outweighed by a danger of unfair prejudice and confusion. J.A. 4006–08; *see also* FED. R. EVID. 403. This was an abuse of discretion because the email chain included portions with high probative

---

[5] While the dissent notes "a trial judge's decision to admit or exclude evidence under Fed. R. Evid. 403 may not be reversed unless it is *arbitrary and irrational*," Dissent at 2–3 (citing *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 187 (3d Cir. 1990)), we conclude the multiple clear errors identified below in the trial judge's analysis resulted in an arbitrary and irrational exclusion of evidence.

18    WONDERLAND SWITZERLAND AG v. EVENFLO COMPANY, INC.

value for the issue of willfulness that far outweighs the limited concerns identified by the district court.

Willful infringement is "a measure of reasonable commercial behavior in the context of the tort of patent infringement." *Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1583 (Fed. Cir. 1996). "Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness. Rather, willfulness requires deliberate or intentional infringement." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021). It is therefore highly relevant whether an infringer acted "despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer.'" *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 97 (2016)).

The email chain at issue includes a message from an employee of Evenflo's affiliated corporation (Goodbaby) to several individuals, at least some of whom are Evenflo employees, stating:

> We have studied Graco Nautilus patent [the '043 patent at issue in this appeal] and thought that the function "Locking of booster seat lower section to tubes" might fell under below patent as the scope of below claim is quite broad. While we also find the EVENFLO EVOLVE might also involve this and could you pls advise HOW US avoid the claims of the patent ingeniously? Thanks.

J.A. 3786. The email further includes a screenshot of claim 1 of the '043 patent. *Id.* A follow-up email from the same individual then states:

> Phil or someone else will help to send us the lawyer letter about HOW US avoid the claims of Graco Nautilus patent [the '043 patent] ingeniously.

J.A. 3785.

The messages reproduced above are clearly probative of willfulness, and they are not merely cumulative of Evenflo's stipulation to awareness of the '043 patent.  J.A. 57.  As noted previously, willfulness requires more than mere "[k]nowledge of the asserted patent."  *Bayer*, 989 F.3d at 988.  Here, the messages go beyond knowledge by demonstrating Evenflo was aware one of its accused 3-in-1 seats—the Evenflo Evolve—was at risk of infringement and that its affiliate sought advice from Evenflo on how to "ingeniously" avoid the claims of the '043 patent.  J.A. 3785–86.  Moreover, to the extent the district court excluded the email chain because it is "unclear exactly which portion" of the product might infringe, J.A. 4008, this was clear error.  The email chain, on its face, plainly makes Evenflo aware that its affiliate, Goodbaby, had concerns about the Evenflo Evolve's "[l]ocking of [the] booster seat lower section to tubes."  J.A. 3786.

As for the danger of unfair prejudice and confusion, we conclude the district court abused its discretion by excluding the email chain rather than managing any existing risk through limiting instructions or redaction.  *See* 2 Weinstein's Federal Evidence § 403.02 (2025) ("If there is doubt about the existence of unfair prejudice, confusion of issues, [etc.] . . . it is generally better practice to admit the evidence, taking necessary precautions by way of contemporaneous instructions to the jury followed by additional admonitions in the charge[.]"); *id.* ("The court has the power to admit part of a line of proof while excluding the more prejudicial details.").  While we do not preclude a determination that some portions of the lengthy email chain should be excluded because they are difficult to decipher or reference companies and products unrelated to this litigation, we see no such issues with the limited and highly probative portions relating to the Evenflo Evolve addressed by the parties on appeal.  *See* J.A. 3785–86.

To the extent the district court identified potential privilege and hearsay concerns, J.A. 4008, this was also clear error. The email chain's mere reference to a "lawyer letter" does not raise any privilege issues and could be easily redacted if needed. J.A. 3785. Further, the relevant portions of the email chain are not hearsay because they were not offered to show the truth of the matter asserted (i.e., that the Evenflo Evolve infringes claim 1 of the '043 patent) but to show that Evenflo was on notice of its infringement risk. Accordingly, we conclude the district court abused its discretion by excluding highly probative willfulness evidence in the email chain based solely on non-existent or otherwise manageable concerns.

Finally, excluding these portions of the email chain was not harmless, as it impaired Wonderland's substantial rights to effectively prove its case of willfulness. Because we cannot say it is highly probable that this exclusion did not affect the case's outcome, we reverse the district court's denial of a new trial and remand for a new trial on willful infringement of the '043 patent relating to the 3-in-1 seats only (excluding the 4-in-1 seats that no reasonable jury could find infringe, *see* § I.A, *supra*). On remand, the district court should admit the most probative portions of the email chain that (1) suggest the Evolve 3-in-1 seat might fall within the scope of claim 1 of the '043 patent and (2) ask how to "avoid the claims of the patent." J.A. 3785–86. We otherwise leave it to the district court's discretion to determine how to minimize the risk of unfair prejudice and confusion through redaction of the remainder of the email chain, limiting instructions, or both.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the foregoing reasons, we (1) reverse the district court's judgment that Evenflo's 4-in-1 seats infringe the '043 patent under DOE and thus vacate the corresponding damages award; (2) reverse the district

court's grant of a permanent injunction as to both the '043 and '951 patents; (3) reverse the denial of a new trial on willful infringement for the '043 patent; and (4) otherwise affirm the district court's judgment as it relates to the issues raised on appeal.  We remand for further proceedings consistent with this opinion.

**AFFIRMED-IN-PART, REVERSED-IN-PART, VACATED-IN-PART, AND REMANDED**

COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

---

**WONDERLAND SWITZERLAND AG,**

*Plaintiff-Cross-Appellant*

**v.**

**EVENFLO COMPANY, INC.,**

*Defendant-Appellant*

---

2023-2043, 2023-2233, 2023-2326

---

Appeals from the United States District Court for the District of Delaware in No. 1:20-cv-00727-JPM, Judge Jon P. McCalla.

---

REYNA, *Circuit Judge*, concurring-in-part and dissenting-in-part.

I concur with the majority's disposition of Evenflo's appeal. But I cannot join the majority's determination on Wonderland's cross-appeal for a new trial on willful infringement. Contrary to the majority's decision, the district court did not abuse its discretion in excluding an email chain, i.e., the "Dracula Email Chain." Rather, the district court's balancing of considerations under Fed. R. Evid. 403 was careful and comprehensive.

I.

We review the denial of a motion for a new trial under the law of the regional circuit, here the Third Circuit.

2    WONDERLAND SWITZERLAND AG v. EVENFLO COMPANY, INC.

*Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1202 (Fed. Cir. 2010). The Third Circuit reviews a district court's denial of a motion for a new trial for abuse of discretion, a highly deferential standard. *Bhaya v. Westinghouse Elc. Corp.*, 922 F.2d 184, 187 (3d Cir. 1990). This is because, "the trial judge [ ] saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart." *Id.* (citation modified).

The Third Circuit applies "[p]articular deference" to the district court's new trial determination stemming from a ruling under Fed. R. Evid. 403, which "itself [is] entrusted to the [district] court's discretion." *Id.* ("If judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal[.]" (quoting *United States v. Long*, 574 F.2d 761, 767 (3rd Cir. 1978))). Under Fed. R. Evid. 403, a district court may exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

As the Third Circuit has explained,

> Rule 403 is a balancing test, and like any balancing test, the Rule 403 standard is inexact, requiring sensitivity on the part of the trial court to the subtleties of the particular situation, and considerable deference on the part of the reviewing court to the hands-on judgment of the trial judge.

*United States v. Vosburgh*, 602 F.3d 512, 537 (3d Cir. 2010) (citation modified); *see also United States v. Scarfo*, 41 F.4th 136, 178 n.35 (3d Cir. 2022) ("[S]uch discretion is construed especially broadly in the context of Rule 403."); *United States v. Heatherly*, 985 F.3d 254, 266 (3d Cir. 2021) (noting that "[d]istrict courts deserve broad deference in applying Rule 403" for the "rule is written in discretionary terms"). Thus, in the Third Circuit, "a trial judge's decision

to admit or exclude evidence under Fed. R. Evid. 403 may not be reversed unless it is '*arbitrary and irrational*.'" *Bhaya*, 922 F.2d at 187 (emphasis added); *see also Langbord v. United States Dep't of Treasury*, 832 F.3d 170, 192 (3d Cir. 2016).   Under the arbitrary and irrational standard, "[a] district court's decision . . . cannot be reversed merely because . . . members of a reviewing court[ ] possess a different view concerning the probative value or prejudicial effect of the challenged evidence." *United States v. Universal Rehab. Servs. (PA), Inc.*, 205 F.3d 657, 665 (3d Cir. 2000) (en banc) (affirming the district court's Rule 403 ruling as neither arbitrary nor irrational when "the District Court's balancing was careful and comprehensive").

## II.

Applying the Third Circuit's deferential standard of review, I would affirm the district court's decision to deny Wonderland a new trial on willful infringement.   The district court's decision to exclude the Dracula Email Chain under Fed. R. Evid. 403 was neither arbitrary nor irrational but instead reflected a careful and comprehensive balancing of the weight of the evidence's probative value against the risk of prejudice and jury confusion.

The district court articulated sound reasons for concluding that the risks outweighed the probative value. J.A. 4008.   To be clear, the Dracula Email Chain had some probative value as to willfulness.   As the district court acknowledged, the Dracula Email Chain may be probative to show that Evenflo was on notice that its affiliate believed one of Evenflo's accused products, the Evenflo Evolve, could fall within the scope of the '043 patent.   *Id.*   But, the district court determined that the Dracula Email Chain is unfairly prejudicial to Evenflo and risks confusing the jury, considerations which substantially outweigh its probative value.   *Id.*   Specifically, as the district court explained, "[p]resenting the email [chain] and teaching the jury about Project Dracula while also making sure they do not confuse

it with the car seats that are at issue in the case would be challenging, confusing, and likely prejudicial to Evenflo." *Id.* These are the very type of sound, analytical considerations underlying a Fed. R. Evid. 403 determination in the Third Circuit. *See, e.g.*, *Bhaya*, 922 F.2d at 188–89 (affirming exclusion of out-of-court statements under Rule 403 because testimony risked confusion of the issues when the testimony "invited the jurors to ponder" other legal claims not asserted in the case).

The Dracula Email Chain consists of several emails. J.A. 3785–3805. At issue are two emails, a February 14 email and February 17 email. J.A. 3785–86. The sender of both emails is an employee of non-party Goodbaby Child Products Co., Ltd. ("Goodbaby").[1] *Id.* The recipients include some employees of Evenflo. *Id.* The subject line of these two emails is "Dracula Project: [] Booster Design Feedback" and the emails focus on Goodbaby's development of the "Dracula" car seat, a product not accused in this case and separate from Evenflo's accused product. *Id.* The Goodbaby employee asks "HOW US," i.e., Goodbaby, can "avoid the claims of the patent ingeniously," as to the Dracula car seat, i.e., the subject product of the email chain. J.A. 3785–36. The only time the Goodbaby employee references Evenflo's accused product is in passing, noting that the product "might" involve a "function" of the Dracula car seat. J.A. 3786. Thus, the Dracula Email Chain's reference to Evenflo's product can only be understood by reviewing the context of the email chain, which involves Goodbaby's development of the Dracula car seat. As the district court concluded, "teaching the jury about Project Dracula while also making sure they do not confuse it with the car seats that are at issue in the case would be

---

[1]    Evenflo and Goodbaby share the same parent company. *See* Evenflo Opp. Br. at 40; Wonderland Reply Br. at 6.

challenging, confusing, and likely prejudicial to Evenflo." J.A. 4008. The district court also concluded that redactions and/or jury instructions to the Dracula Email Chain could not sufficiently mitigate the potential for confusion and prejudice. *Id.* The district court's Rule 403 ruling is not arbitrary nor irrational and should be affirmed.

The problem here is that the majority substitutes its judgment for that of the district court. The majority concludes that the Dracula Email Chain is "clearly probative." Maj. Op. 19. The task before us, however, is not to determine anew the probative value of the evidence but to determine whether the district court's assessment of the evidence was arbitrary or irrational. Here, the district court determined that the Dracula Email Chain, which reflects non-party Goodbaby's efforts concerning a non-accused product, was less than "clearly probative" as to Evenflo's intent to willfully infringe the '043 patent. J.A. 4008. The majority fails to explain why this determination was arbitrary or irrational.

The majority also concludes the district court should have managed any existing risk of prejudice and confusion through jury instructions or redactions. Maj. Op. 19–20. The question, however, is not whether the district court could have, as the majority contends, managed any prejudice or confusion via redactions and jury instructions, but whether the district court's decision regarding jury instructions was arbitrary or irrational. Here, the district court considered the context of the Dracula Email Chain and concluded that redactions or jury instructions could not mitigate risk of prejudice or confusion. J.A. 4008. The majority fails to explain why this determination was arbitrary or irrational. In sum, the majority substitutes its judgment for the district court's, contrary to Third Circuit law requiring broad deference to a district court's Fed. R. Evid. 403 ruling. *See, e.g., Universal Rehab. Servs.*, 205 F.3d at 665.

For these reasons, I dissent.